No. 102,452

STATE OF KANSAS, *Appellee*, v. GEORGE JAMES BROOKS, III, *Appellant*.

(317 P.3d 54)

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause, and *Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: George James Brooks, III, was convicted of one count of rape under K.S.A. 2005 Supp. 21-3502(a)(1)(A) (defining rape as "[s]exual intercourse with a person who does not consent to the

sexual intercourse" under circumstances "[w]hen the victim is overcome by force or fear"), two counts of blackmail, and one count of breach of privacy. The Court of Appeals reversed Brooks' convictions for rape and breach of privacy due to insufficient evidence. *State v. Brooks*, 46 Kan. App. 2d 601, 265 P.3d 1175 (2011).

We granted the State's petition for review to determine whether the Court of Appeals erred when it determined that the evidence presented at Brooks' trial failed to establish that the victim, J.P., was overcome by either force or fear. We also granted Brooks' cross-petition for review to address whether the Court of Appeals erred when it construed the phrase force or fear in K.S.A. 2005 Supp. 21-3502(a)(1)(A) as establishing a single means of committing rape.

Based on our recent decision in *State v. Brown*, 295 Kan. 181, 194, 200, 284 P.3d 977 (2012), we agree with the Court of Appeals' conclusion that the phrase force or fear establishes a single means of committing rape. But we disagree with the Court of Appeal's analysis, which was based on an erroneous construction of the term "fear," that no evidence was presented at trial showing that J.P. was overcome by fear. Accordingly, we reverse the Court of Appeals' decision reversing Brooks' rape conviction.

## FACTS

Because the parties do not dispute the accuracy of the statement of facts contained in the Court of Appeals' opinion, we quote extensively from that section of the opinion.

"Brooks and J.P. married in 1996. They separated in May 2005 and were divorced 10 months later. On May 7, 2006, a Sunday, Brooks accessed J.P.'s e-mail account and forwarded to his own e-mail account copies of communications she had with a married male coworker in August and October 2005. The e-mails indicated J.P. and her coworker had been carrying on an extramarital affair.

"Later on May 7, Brooks telephoned J.P. and told her he had copies of the e-mails. He read portions of them to her during the conversation. J.P. testified at trial that hearing Brooks read the e-mails gave her a very sick feeling. She said Brooks concluded the conversation by saying he would be coming over to her house for sex that evening.

"Brooks arrived at the house about 8:30 p.m. with a folder containing copies of the e-mails. He told J.P. that he would give copies to her employer and to her coworker's wife if she did not do as he said. J.P. asked Brooks to leave. But he

told J.P. that he would carry out his threat to publicize her affair if she didn't have sex with him. J.P. told Brooks in no uncertain terms that she did not want to have sex with him and it would be against her will. He said that wasn't a problem. Brooks then directed J.P. to take off her underwear. When she hesitated, Brooks—in her words—'started getting agitated.' J.P. complied. Brooks took off his pants and put on a condom. J.P. sat in a chair, and Brooks had intercourse with her. Brooks had his hands on her legs during the act. J.P. said she had her hands over her face and her eyes closed so she would not have to look at Brooks.

"When Brooks was done, J.P. asked for the e-mails. He told her that their encounter had been a 'test' and he would be back on Friday for more sex.

"During her trial testimony, J.P. did not elaborate on Brooks' agitation. And she did not indicate that she thought Brooks would have physically harmed her had she refused to have sex. But she did believe he would disclose the affair. When Brooks confronted J.P., she and her coworker remained romantically involved. J.P. told the jury she did not want the relationship publicized because they worked closely and many of their colleagues knew her coworker's wife. J.P. said disclosure of the affair would have tainted the workplace and created something that 'was not a good situation.' But J.P. testified that she had no reason to think she would have been fired or would have suffered any adverse change in the terms or conditions of her employment were the affair to come to light. J.P. told the jury she and Brooks had sex on May 7 only because he had the e-mails and threatened to expose her workplace affair if she did not submit.

"On Monday, May 8, J.P. told both her lawyer and her counselor what Brooks had done to her the evening before. They urged her to contact the police. She did. A detective with the Topeka Police Department took a statement from J.P. and gave her a recorder to tape any calls from Brooks. She taped a message from her answering machine and several calls with Brooks. In those communications, Brooks asked for money in addition to another sexual encounter. J.P. agreed to meet with Brooks on May 12. When Brooks arrived at her home, police officers arrested him.

"Brooks denied having sexual relations with J.P. earlier that week. He claimed she had offered to have sex with him to secure the return of the e-mails. Brooks testified he agreed, but they never actually had sex that evening. Brooks also testified that J.P. had given him her e-mail address and password. At trial, J.P. denied doing so and said Brooks had no authorization to access her e-mails.

"The State charged Brooks with one count of rape [under K.S.A. 2005 Supp. 21-3502(a)(1)(A)], one count of attempted rape, two counts of blackmail, and one count of breach of privacy. The 4-day jury trial began on July 21, 2008. The jury found Brooks not guilty of attempted rape (stemming from his return to J.P.'s home on May 12) and convicted him on all of the remaining counts. On September 5, 2008, the trial court sentenced Brooks to 155 months in prison on the rape conviction, 12 months in prison on each blackmail conviction, and 12 months in the county jail on the breach of privacy conviction. Each of those terms of incarceration reflects a standard guideline sentence based on Brooks' lack of any past

criminal conduct. The trial court ordered Brooks to serve the blackmail sentences consecutive to each other and consecutive to the rape sentence. The jail time was made concurrent to the other sentences, yielding a controlling term of incarceration of 179 months." *Brooks*, 46 Kan. App. 2d at 603-05.

On appeal before the Court of Appeals, Brooks argued that the State presented insufficient evidence to convict him of rape and breach of privacy. With regard to the rape charge, Brooks argued that he was charged with alternative means of committing rape based on the language of K.S.A. 2005 Supp. 21-3502(a)(1)(A), defining rape as sexual intercourse with a person who does not consent to the sexual intercourse, under circumstances "[w]hen the victim is overcome by force *or* fear." (Emphasis added.) Based on the super-sufficiency requirement for evidence in an alternative means case, see *State v. Wright*, 290 Kan. 194, 203-06, 224 P.3d 1159 (2010), Brooks argued that the State failed to present sufficient evidence that J.P. was overcome by either force or fear when she submitted to having sex with him. Accordingly, he argued that his conviction for rape had to be reversed due to insufficient evidence.

The Court of Appeals addressed Brooks' argument by first determining whether the phrase force or fear established alternative means of committing rape. The court noted that the issue was important because if force or fear established a single means, "then the evidence need only support one or the other to uphold a verdict of guilty." *Brooks*, 46 Kan. App. 2d at 608. Conversely, if force or fear established alternative means, then the evidence presented at trial had to be sufficient to support each means. 46 Kan. App. 2d at 608-09.

Based on what it perceived as this court's construction of the phrase in *Wright*, the Court of Appeals concluded that force or fear should be construed as establishing a single means of committing rape. 46 Kan. App. 2d at 609-10. The court then reasoned that

"there must be some commonality or relationship between the type of force that suffices to violate the rape statute and the fear that does. In other words, the victim must be fearful of the sort of force contemplated in the statute. Absent that connection, force and fear would amount to alternative means of committing

rape. They would be sufficiently distinct to be separate ways of overcoming a victim." 46 Kan. App. 2d at 612.

With regard to "force," the court interpreted the term as requiring a victim to be overcome by the use of actual or physical force against the victim, another person, or property. Based on this construction of the term "force" and the belief that there must be some commonality or relationship between the terms force and fear, the court construed "fear" to mean fear resulting from the use or threat to use force—as that term was defined by the court. 46 Kan. App. 2d at 612-14.

With these definitions in place, the Court of Appeals proceeded to determine whether sufficient evidence was presented at trial to show that J.P. submitted to having sexual intercourse with Brooks based on either force or fear. Regarding force, the court noted that "the record is bereft of any evidence Brooks used force to compel J.P.'s compliance with his demand. To the contrary, he coerced her solely with threats to expose her workplace affair. Brooks did not touch J.P. at all until sexual intercourse occurred." 46 Kan. App. 2d at 611. With regard to fear, the court found that Brooks' threat to publicize J.P.'s affair "did not involve any present or future application of force and, in turn, the response it provoked in J.P., however disquieting or upsetting, did not constitute fear of the sort that supports a rape charge under the Kansas law." 46 Kan. App. 2d at 614. The court concluded that the evidence presented at trial failed to satisfy all the elements of rape as defined in K.S.A. 2005 Supp. 21-3502(a)(1)(A) and, thus, reversed Brooks' rape conviction. 46 Kan. App. 2d at 614-15.

Judge Stephen Hill dissented, arguing that the term force should be broadly construed to include not only the use of physical force, but also the use of "psychological or emotional force to overcome" a victim. Brooks, 46 Kan. App. 2d at 628. Furthermore, he argued that based on State v. Borthwick, 255 Kan. 899, 913-14, 880 P.2d 1261 (1994), evidence that a victim was overcome by fear resulting from actions other than the use or threat to use physical force is sufficient to sustain a rape conviction under K.S.A. 2005 Supp. 21-3502(a)(1)(A). Judge Hill believed the evidence presented at trial

was sufficient to affirm Brooks' rape conviction. *Brooks*, 46 Kan. App. 2d at 630.

ANALYSIS

In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this court, quoting *State v. Kitchen*, 100 Wash. 2d 403, 410, 756 P.2d 105 (1988), stated:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.' "

Subsequently, in *Wright*, this court held that appellate courts should apply a super-sufficiency of the evidence test in alternative means cases. Under this test, the State must present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. Therefore, when the jury is instructed on alternative means of committing a single crime and the State fails to present sufficient evidence to support each means, reversal is required. *Wright*, 290 Kan. at 202-03. Conversely, if the jury was not instructed on alternative means but merely received instructions on "options within a means," then the lack of evidence on one of the options will not require reversal. See *Brown*, 295 Kan. at 196-98; *Wright*, 290 Kan. at 203.

The above-noted rules shape the parties' arguments on appeal. In the State's petition for review, the State agrees with the Court of Appeals' analysis that the phrase force or fear in K.S.A. 2005 Supp. 21-3502(a)(1)(A) establishes a single means of committing rape. The State contends, however, that the Court of Appeals erred when it reversed Brooks' rape conviction based on the lack of evidence showing that J.P. was overcome by fear resulting from the use or threat to use force. The State argues that the Court of Appeals erred in narrowly construing the term fear, resulting in the court's failure to consider evidence that J.P. was overcome by fear of Brooks publicly exposing her affair with a coworker. The State contends that if this evidence is considered, then sufficient evidence was presented at Brooks' trial to convict him of rape in violation of K.S.A. 2005 Supp. 21-3502(a)(1)(A).

In contrast, Brooks argues in his cross-petition for review that based on this court's decision in *Timley*, the phrase force or fear creates alternative means of committing rape. He argues that regardless of whether there was sufficient evidence of fear presented at trial, the State failed to present any evidence that J.P. was overcome by force and, thus, his rape conviction should be reversed due to a failure to satisfy the super-sufficiency of the evidence test for alternative means cases.

In order to resolve the issues raised by the parties, we will first address whether the phrase force or fear creates alternative means of committing rape, resulting in the application of the super-sufficiency of the evidence test. Our determination of the alternative means issue will shape the analysis of the second issue: whether the State presented sufficient evidence to convict Brooks of rape as defined in K.S.A. 2005 Supp. 21-3502(a)(1)(A).

### A. Does the Phrase "Force or Fear" Create Alternative Means of Committing Rape?

Recently, in *Brown*, this court held that appellate courts must first determine whether the jury was presented with alternative means on a charge before applying the super-sufficiency requirement. 295 Kan. at 194. "Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means of committing a crime, raise questions of law reviewable de novo on appeal." *State v. Britt*, 295 Kan. 1018, Syl. ¶ 1, 287 P.3d 905 (2012).

In *Brown*, this court stated:

"In examining legislative intent, a court must determine for each statute what the legislature's use of a disjunctive 'or' is intended to accomplish. Is it to list alternative distinct, material elements of a crime—that is, the necessary *mens rea*, *actus reus*, and in some statutes, a causation element? Or is it to merely describe a material element or a factual circumstance that would prove the crime? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. But merely describing a material element or a factual circumstance that would prove the crime does not create alternative means, even if the description is included in a jury instruction." 295 Kan. at 194.

We discussed some guideposts in *Brown* for determining whether the legislature intended to create alternative means as opposed to merely options within a means. We noted that in conducting this analysis and determining the legislature's intent, ordinary rules of statutory construction apply. *Brown*, 295 Kan. at 193-94. In addition, "[t]ypically . . . a legislature will signal its intent to state alternative means through structure, separating alternatives into distinct subsections of the same statute." 295 Kan. at 196 (citing *State v. Smith*, 159 Wash. 2d 778, 784-86, 154 P.3d 873 [2007]). However, the *Brown* court went on to say:

"Regardless of such subsection design, . . . a legislature may list additional alternatives or options within one alternative means of committing the crime. But these options within an alternative do not constitute further alternative means themselves if they do not state additional and distinct ways of committing the crime, that is, if they do not require proof of at least one additional and distinct material element. Rather they are only options within a means if . . . their role is merely to describe a material element or to describe the factual circumstances in which a material element may be proven. [Citation omitted.]" 295 Kan. at 196-97.

With these guidelines in mind, it is helpful to look at the structure of K.S.A. 2005 Supp. 21-3502 before examining the specific language of subparagraphs (a)(1)(A). K.S.A. 2005 Supp. 21-3502(a) describes the various acts that constitute rape. The statute states:

"(a) Rape is: (1) Sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:

(A) *When the victim is overcome by force or fear*;

(B) when the victim is unconscious or physically powerless; or

(C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender;

"(2) sexual intercourse with a child who is under 14 years of age;

"(3) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a medically or therapeutically necessary procedure; or

"(4) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a legally required procedure within the scope of the offender's authority." (Emphasis added.)

K.S.A. 2005 Supp. 21-3502(a) is divided into four subsections, each subsection addressing a scenario that would constitute rape. Subsection (a)(1) proscribes the general act of having "sexual intercourse with a person who does not consent to the sexual intercourse" under circumstances which are divided into three subparagraphs. The language at issue in this case, "[w]hen the victim is overcome by force or fear," is contained within the first subparagraph and is separated from the other circumstances constituting rape under subsection (a)(1) (*i.e.*, "when the victim is unconscious or physically powerless," or "when the victim is incapable of giving consent [for various reasons]"). See K.S.A. 2005 Supp. 21-3502(a)(1)(A), (B), (C). The structure of subsection (a)(1) suggests that the legislature intended for subparagraphs (A), (B), and (C) to constitute three alternative means of committing rape when the victim does not consent to having sexual intercourse.

As mentioned above, this court explained in *Brown* that options listed within a single subsection of a statute do not state alternative means if the language merely defines other statutory language in a way that elaborates on or describes a material element or describes factual circumstances that prove the crime. 295 Kan. at 196-97. In *Brown*, the statutory language defining aggravated indecent liberties with a child stated in one subsection that the crime was committed by "any lewd fondling or touching of either a child who is under 14 years of age or the offender 'done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both.' " 295 Kan. at 201. Brown argued that the language "either the child or the offender, or both" created alternative means of committing the crime, but this court found that the language created options within a means instead. 295 Kan. at 201-02. The court concluded that the language was "merely descriptive of the types of factual circumstances that may prove the distinct, material element of intent to arouse or satisfy sexual desires, that is, the *mens rea* required for commission of the offense." 295 Kan. at 201; see *State v. Cheffen*, 297 Kan. 689, 699, 702, 303 P.3d 1261 (2013) (concluding that the phrase "in the commission of, attempt to commit, or flight from an inherently dangerous felony" did not create alternative means of committing felony mur-

der); *State v. Ultreras*, 296 Kan. 828, 850-54, 295 P.3d 1020 (2013) (concluding that the phrases "great bodily harm to another person or disfigurement of another person" and "bodily harm to another person with a deadly weapon or in any manner whereby great bodily harm, disfigurement or death can be inflicted" did not create alternative means of committing aggravated battery); *State v. Haberlein*, 296 Kan. 195, 208-09, 290 P.3d 640 (2012) (concluding that the phrases "force, threat, or deception" and "to facilitate flight or the commission of any crime" did not create alternative means of committing kidnapping or aggravated kidnapping); *Britt*, 295 Kan. at 1026-27 (concluding that the phrase "any penetration of the female sex organ by a finger, the male sex organ or any object" contained within definition of sexual intercourse did not create alternative means of committing rape); *State v. Burns*, 295 Kan. 951, 962-64, 287 P.3d 261 (2012) (concluding that the phrase "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia" contained within definition of sodomy did not create alternative means of committing aggravated criminal sodomy), *overruled on other grounds by State v. King*, 297 Kan. 955, 305 P.3d 641 (2013) *State v. Rojas-Marceleno*, 295 Kan. 525, 546-48, 285 P.3d 361 (2012) (concluding that the phrase "to commit or submit to an unlawful sexual act" did not create alternative means of committing aggravated indecent solicitation of a child).

Similarly, the statutory language "[w]hen a victim is overcome by force or fear" does not present two alternative means of committing rape. Rather, the phrase force or fear, like the language at issue in *Brown*, merely describes a factual circumstance that may prove a distinct, material element of rape—namely, having nonconsensual sexual intercourse with a victim who is "overcome." In other words, the *actus reus* of K.S.A. 2005 Supp. 21-3502(a)(1)(A) is "to overcome," and the phrase force or fear merely describes this material element. See *Brown*, 295 Kan. at 196-97. In accordance with our holding in *State v. Nunez*, 298 Kan. 661, 316 P.3d 717 (2014), we conclude that force or fear are not alternative means but options within a means, and the inclusion of this language in the jury instructions did not make this an alternative means case

triggering concerns of jury unanimity (*i.e.*, evidence of either force or fear is sufficient to sustain Brooks' rape conviction under K.S.A. 2005 Supp. 21-3502[a][1][A]).

Brooks counters this conclusion by arguing that this court's decision in *Timley* established that the phrase force or fear does create alternative means of committing rape. In *Timley*, the defendant argued that the trial court erred in instructing the jury that it could find him guilty of rape based on the victims being overcome by either force or fear. The defendant argued that instructing the jury in this manner deprived him of a unanimous verdict because some jurors may have found that the victims were overcome by force while other jurors may have found that the victims were overcome by fear. In making this argument, however, the defendant mischaracterized the issue as a "multiple acts" issue instead of an alternative means issue. Despite this error, this court applied an alternative means analysis and ultimately rejected the defendant's argument. The *Timley* court stated:

"In his appellate brief, Timley's counsel readily points out that there was evidence from which the jury could determine that each sexual act was the result either of force, based on Timley's choking the victims, or of fear, based on the threats Timley made to the victims. *There was sufficient evidence, viewed in the light most favorable to the prosecution, that a rational factfinder could have found Timley guilty beyond a reasonable doubt of the crimes of rape and aggravated criminal sodomy either by the means of force or by the means of fear. There was no error in including both alternative means in one instruction to the jury.*" (Emphasis added.) *Timley*, 255 Kan. at 290.

Subsequently, this court in *Wright* analyzed the *Timley* decision and reiterated its conclusion that force and fear are separate alternative means of committing rape, requiring sufficient evidence of both means to uphold a conviction:

"The [*Timley*] court then held that there was sufficient evidence to convict Timley of rape and aggravated criminal sodomy either by force or by fear; thus, '[t]here was no error in including both alternative means in one instruction to the jury.' [Citation omitted.] The indispensable component in the court's holding was 'super-sufficiency' of evidence, *i.e.*, proof adequate to persuade a rational factfinder of Timley's guilt on rape by fear *and* rape by force. [Citation omitted.] *If evidence had been lacking on either means alleged, Timley's rape conviction would have been reversed.*" (Emphasis added.) *Wright*, 290 Kan. at 203.

This passage from *Wright* appears to reaffirm *Timley's* construction of the phrase force or fear as establishing alternative means of committing rape. But later in the decision, when the *Wright* court applied *Timley* to the facts of the case, the court clearly treated the phrase force or fear as establishing a single means of committing rape. The defendant in *Wright* argued that the jury was instructed on alternative means when it was instructed that the defendant could be convicted of rape if the act of sexual intercourse was committed without the consent of the victim under circumstances where (a) the victim was overcome by force or fear, or (b) the victim was unconscious or physically powerless. The defendant conceded there was sufficient evidence that the victim was unconscious or physically powerless. Her only argument on appeal was that there was insufficient evidence to establish that the victim was overcome by force or fear. In addressing the defendant's argument, this court stated:

> "The evidence in this case was sufficient to find Wright guilty beyond a reasonable doubt of committing rape by force or fear. J.L. testified that she woke to the realization that Wright was digitally penetrating her vagina and *was paralyzed with fear*. Under [*State v. Bunyard*, 281 Kan. 392, 133 P.3d 14 (2006)], it does not matter that the initial penetration by Wright may not have been temporally coincidental with J.L.'s fear; it is enough that the penetration and fear were eventually contemporaneous. There is no error under the *Timley* alternative means rule here, because the evidence of each means of committing rape—*by force or fear* or by unconsciousness—was sufficient to uphold a guilty verdict on the rape charge." (Emphasis added.) *Wright*, 290 Kan. at 206-07.

Despite recognizing *Timley's* construction of the phrase force or fear as establishing alternative means of committing rape, the final paragraph of the alternative means analysis in *Wright* suggests that the *Wright* court actually considered force or fear as a single means of committing rape because the only evidence the court cited to support the defendant's rape conviction was evidence showing that the victim was overcome by fear. The *Wright* court neither mentioned nor analyzed the lack of evidence suggesting that the victim was overcome by force. Admittedly, the defendant in *Wright* did not specifically raise the argument that force or fear are alternative means of committing rape, but if the phrase truly establishes al-

ternative means—as the *Wright* court recognized was *Timley*'s holding—then the rape conviction in *Wright* should have been reversed due to insufficient evidence showing that the victim was overcome by force. However, because the rape conviction was found to be supported by sufficient evidence, *Wright* can be read as implicitly construing force or fear as a single means of committing rape.

Regardless of whether *Wright* should be read as an acceptance or ultimate rejection of *Timley*'s construction of the phrase force or fear, one thing is clear: *Timley* reached the conclusion that the phrase establishes alternative means of committing rape without conducting any analysis of the statutory language. This implies that the *Timley* court simply assumed that the appearance of an "or" in statutory language automatically creates alternative means for committing a crime. As noted above, the *Brown* decision did away with this assumption and established a framework for determining for each statute what the legislature's use of the disjunctive "or" is intended to accomplish—establish alternative means or options within a means. Based on *Brown* and its progeny, we conclude that sexual intercourse with a person who does not consent under circumstances when the victim is overcome by force or fear is a single, unified means of committing rape. Accordingly, sufficient evidence supports a defendant's conviction for rape under K.S.A. 2005 Supp. 21-3502(a)(1)(A) when the jury was instructed that it must find that the victim was overcome by force or fear and evidence of either force or fear was presented at trial. Language contained in *Timley* and *Wright* suggesting otherwise is specifically disapproved.

B. *Did the State Present Sufficient Evidence that Brooks Committed Rape in Violation of K.S.A. 2005 Supp. 21-3502(a)(1)(A)?*

The State argues that it presented sufficient evidence to show that J.P. was, at the very least, overcome by fear as contemplated in K.S.A. 2005 Supp. 21-3502(a)(1)(A). As mentioned above, the Court of Appeals construed the term "fear" to mean fear resulting from the use or threat to use force against the victim, another

person, or property. Construing the term fear in this manner led the court to conclude that J.P.'s fear—derived from Brooks' threat to publically reveal her affair with a married coworker—was insufficient to show that she was overcome by fear under K.S.A. 2005 Supp. 21-3502(a)(1)(A). The State contends that the Court of Appeals' construction of the term fear is contradicted by this court's opinion in *State v. Borthwick*, 255 Kan. 899, 880 P.2d 1261 (1994), a case which explained what type of evidence is sufficient to establish fear in a rape case. The State contends that based on *Borthwick*, J.P.'s fear was sufficient to satisfy the statutory element of the victim being overcome by fear.

The State's argument necessarily involves construction of the term "fear" in K.S.A. 2005 Supp. 21-3502(a)(1)(A). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

Furthermore, in *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010), we stated:

"An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.] When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent. [Citation omitted.]"

In construing the term "fear" in K.S.A. 2005 Supp. 21-3502, this court in *Borthwick* rejected the notion that the fear contemplated in the statute had to result from being threatened with a deadly weapon or even threatened with "force that would prevent resistance by a reasonable person." *Borthwick*, 255 Kan. at 913. The *Borthwick* court refused to define in absolute terms the degree of fear required to sustain a rape conviction, stating that "fear is inherently subjective" because "[w]hat renders one person immo-

bilized by fear may not frighten another at all." 255 Kan. at 913. Similarly, we recently stated in *State v. Tully*, 293 Kan. 176, Syl. ¶ 12, 262 P.3d 314 (2011), that "[f]orce or fear within the definition of rape is a highly subjective concept that does not lend itself to definition as a matter of law." *Cf. State v. Chaney*, 269 Kan. 10, 20, 5 P.3d 492 (2000) ("Like force or fear, incapacity to consent is a highly subjective concept. It is not one which lends itself to definition as a matter of law.").

The victim in *Borthwick* suffered from extreme mobility disabilities; she could not walk without assistance or stand without support. She invited the defendant over to her house. After arriving at the victim's house, the defendant sat down behind the victim on the floor and began touching her despite her asking him to stop. The defendant eventually laid the victim on the floor, lifted up her legs, removed her shorts and underpants, and digitally penetrated her. She testified that she told him to stop and that she tried to keep her legs together, " 'but they always c[a]me apart.' " *Borthwick*, 255 Kan. at 902. Finally, the victim said that during the encounter, she was afraid and felt powerless to stop what was happening. Despite the victim also testifying on cross-examination that the defendant did not "force her in any fashion and that he did not threaten her," the *Borthwick* court concluded that the evidence, when viewed in the light most favorable to the State, was sufficient to establish that the victim was overcome by both force and fear. 255 Kan. at 903, 914.

In reaching this conclusion, the *Borthwick* court distinguished a Pennsylvania case, *Com. v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994), cited by the defendant to support his argument that the State presented insufficient evidence to show that the victim was overcome by force or fear. The *Borthwick* court found that the Pennsylvania case was distinguishable because:

"*The Pennsylvania legislature defined rape differently than did our legislature.* The pertinent portions of the Pennsylvania statute under which [the defendant] was charged required the State to prove that the intercourse occurred 'by forcible compulsion' or 'threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.' [Citation omitted.] The Pennsylvania legislature did not permit a rape conviction when a victim is overcome by fear, except to the

extent that it is fear induced 'by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.' *Fear in and of itself is inherently subjective. Unless otherwise limited in the statutory definition as it is in Pennsylvania, a finding that a particular victim is overcome by fear does not require proof that it is fear induced by threat of force that would prevent resistance by a reasonable person. What renders one person immobilized by fear may not frighten another at all. The reasonableness of a victim's claim that she was overcome by fear necessarily enters into the factfinder's determination about whether the victim is telling the truth.* There is then an important difference between nonconsensual intercourse with a victim overcome by fear (Kansas) and sexual intercourse 'by forcible compulsion' or 'threat of forcible compulsion that would prevent resistance by a person of reasonable resolution' (Pennsylvania)." (Emphasis added.) 255 Kan. at 912-13.

The above passage demonstrates that the *Borthwick* court refused to qualify the term "fear" by reading language into K.S.A. 21-3502 (Ensley 1988) that was not readily found within the statute. Because the legislature did not limit the type of fear that could support a rape conviction, the *Borthwick* court concluded that finding a particular victim is overcome by fear under Kansas' rape statute does not require proof that the victim's fear was "induced by threat of force that would prevent resistance by a reasonable person." 255 Kan. at 913. Instead, the *Borthwick* court noted that "fear is inherently subjective" because "[w]hat renders one person immobilized by fear may not frighten another at all." 255 Kan. at 913. Accordingly, the *Borthwick* court stated:

"Under Kansas law, when a victim testifies that she was overcome by fear, and her testimony is not 'so incredible as to defy belief,' [citation omitted] there is sufficient evidence to present the ultimate determination to the factfinder. The reasonableness of a particular victim's fear may affect the jury's assessment of the victim's credibility in arriving at its verdict." 255 Kan. at 913-14.

Notably, the Court of Appeals' construction of "fear" to mean fear resulting from the use or threat to use force against the victim, another person, or property directly conflicts with the *Borthwick* court's pronouncement that fear is an inherently subjective concept that is generally a question to be resolved by the finder of fact. See 255 Kan. 899, Syl. ¶ 6. Furthermore, by defining "fear" in the manner that it did, the Court of Appeals clearly read language into

the statute that was not readily found in it, violating a well-known rule of statutory construction. See *Urban*, 291 Kan. at 216.

Finally, we also note that the reasoning behind the Court of Appeals' decision to construe "fear" as fear of force (*i.e.*, because the phrase force or fear establishes a single means of committing rape, there must be some commonality or relationship between the two terms) is not supported by our current alternative means caselaw. As noted above, the terms force and fear are considered options within a means because they are used to describe the material element of how a person who does not consent to having sexual intercourse can be "overcome." Even though both terms are used to describe a single material element, this does not mean that the terms must have interconnected definitions. Our recent alternative means caselaw clearly shows that the legislature can use terms with vastly different meanings to describe a single material element or factual circumstance that would prove the crime. See, *e.g.*, *Haberlein*, 296 Kan. at 208-09 (concluding that the phrases "force, threat, or deception" and "to facilitate flight or the commission of any crime" did not create alternative means of committing kidnapping or aggravated kidnapping).

For these reasons, we conclude that the Court of Appeals erred when it construed the term fear in K.S.A. 2005 Supp. 21-3502(a)(1)(A) to mean fear resulting from the use or threat to use force against the victim, another person, or property. In accordance with *Tully* and *Borthwick*, we refuse to qualify the term fear and instead note that fear is an inherently subjective concept because, as recognized by the *Borthwick* court, "[w]hat renders one person immobilized by fear may not frighten another at all." 255 Kan. at 913. As a result, whether a victim is overcome by fear for purposes of K.S.A. 2005 Supp. 21-3502(a)(1)(A) is generally a question to be resolved by the finder of fact. Next, we review the evidence presented at Brooks' trial to see whether the State presented sufficient evidence to show that J.P. was overcome by fear.

When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v.*

*Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 8, 245 P.3d 1030 (2011). Further, "[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." 291 Kan. 697, Syl. ¶ 9. Consequently, circumstantial evidence can be relied on to show that a rape victim was overcome by fear. See *State v. Cantrell*, 234 Kan. 426, 428-29, 673 P.2d 1147 (1983) (despite defendant making no threats, having no weapon, and not cursing or raising his voice, jury could have concluded that victim's resistance was overcome by fear based on evidence showing that she resisted and struggled with defendant, cried, and begged for defendant to stop).

The evidence presented at trial established that on May 7, 2006, Brooks telephoned J.P. and told her he had copies of e-mails that clearly indicated that she was having an affair with a married coworker. He read portions of these e-mails over the phone to J.P., which gave J.P. a very sick feeling. Brooks concluded the conversation by telling J.P. he would be coming over to her house that evening to have sex with her. *Brooks*, 46 Kan. App. 2d at 603-04. J.P. testified at trial that Brooks acted angry over the phone and demanded to have sex with her, telling her, "It's going to have to happen tonight," and that she "owed" it to him.

Later that evening, Brooks arrived at J.P.'s house with a folder containing copies of the emails. He told J.P. that he would give copies to her employer and to her coworker's wife if she did not do as he said. J.P. stated at trial:

"I tried to reason with him, I tried to get him to leave. I didn't, you know, I didn't want him there, and he got agitated, and his threats just remained the same, that he would take those e-mails, and he said he had copies of them at his apartment, and, you know, there is nothing that I could do to keep him from carrying out his threats . . . if I didn't have sex with him . . . ."

As the Court of Appeals noted, "J.P. told Brooks in no uncertain terms that she did not want to have sex with him and it would be against her will. He said that wasn't a problem." *Brooks*, 46 Kan.

App. 2d at 604. According to J.P.'s testimony at trial, Brooks insisted that she take her underwear off. She stated that she "didn't at his first request, but he started getting agitated, then I did." Brooks took off his pants and put on a condom. J.P. sat down in a chair in the living room. Brooks came up to J.P., held onto her legs, and proceeded to have intercourse with her. J.P. had her hands over her face and her eyes closed so she would not have to look at Brooks.

Viewing this evidence in the light most favorable to the State, we conclude that sufficient evidence was presented at trial showing that Brooks had nonconsensual intercourse with J.P. under circumstances when she was overcome by fear. A rational factfinder could infer from the facts presented at trial that J.P. clearly feared Brooks would publicize the e-mails if she did not submit to having sex with him. And because of this fear, she ultimately submitted to having nonconsensual sex with Brooks. Furthermore, J.P.'s testimony indicates that Brooks' behavior and agitation inside her home contributed to J.P. being overcome by fear. J.P. stated that she initially refused Brooks' request for her to take off her underwear, but because Brooks became agitated, she ultimately complied. Finally, a rational factfinder could infer from J.P.'s actions while being sexually penetrated (*i.e.*, closing her eyes and covering her face with her hands) that she was overcome by fear. Finding otherwise is to deny the legitimacy of J.P.'s justifiable fear and its effect on her behavior. See *State v. Bunyard*, 281 Kan. 392, 412, 133 P.3d 14 (2006) ("K.S.A. 2004 Supp. 21-3502[a][1][A] proscribes *all* nonconsensual sexual intercourse that is accomplished by force or fear, not just the initial penetration."); *Wright*, 290 Kan. at 206-07 ("Under *Bunyard*, it does not matter that the initial penetration by [the defendant] may not have been temporally coincidental with [the victim's] fear; it is enough that the penetration and fear were eventually contemporaneous.").

Both dissenting opinions are troubled by our conclusion that sufficient evidence supports Brooks' conviction for rape. Justice Moritz acknowledges that the evidence presented at trial established that Brooks' actions placed J.P. in fear. And because of this fear, J.P., against her will, submitted to being sexually assaulted by

Brooks. In other words, she was overcome by fear. See Webster's Third New International Dictionary 1607 (1993) (defining "overcome" as "to get the better of" and "to affect or influence so strongly as to make physically helpless or emotionally distraught" and identifying "overpower," "conquer," and "subdue" as synonyms of overcome). But the dissent contends that the evidence does not establish that J.P. was overcome by fear because there was no evidence presented at trial that J.P. was "immobilized or paralyzed" by fear, terms it believes are synonymous with overcome.

In support of this position, Justice Moritz notes that we use the phrase "immobilized by fear" four times in our opinion in place of "overcome by fear," which the dissent takes as indicating our acceptance of the phrases' synonymous meanings. What the dissent fails to note is that the four instances where the phrase immobilized by fear appears in our opinion is when we are quoting from *Borthwick* for the purpose of explaining why the Court of Appeals erred in construing the term "fear" to mean "fear of force." Again, *Borthwick* rejected such a qualification of the term, instead concluding that "fear," as used in the rape statute, is a subjective concept because "[w]hat renders one person immobilized by fear may not frighten another at all." *Borthwick*, 255 Kan. at 913. The *Borthwick* court used the phrase immobilized by fear to merely illustrate the subjective nature of "fear." Nowhere in the opinion did the court state or imply that "immobilized" was synonymous with "overcome" in 21-3502. And based on the definition of immobilize, it is clear that the terms are not synonymous. See Webster's Third New International Dictionary 1130 (1993) (defining "immobilize" as "to make immobile" or "fix in place or position" or "render incapable of movement").

Concluding that the terms are synonymous, both Justice Johnson and Justice Moritz then point to J.P.'s behavior prior to and after the sexual intercourse as being indicative of someone who merely succumbed to conspiracy or blackmail and not someone who was overcome by fear. In making this argument, *i.e.*, how a rape victim should act, both of the dissents take on the role of a jury, weighing the evidence and passing on the credibility of J.P., something that

is clearly improper on appellate review. See *McCaslin*, 291 Kan. 697, Syl. ¶ 8. To make matters worse, the dissenting opinions completely ignore the evidence establishing that J.P. was overcome by fear immediately before and during the sexual intercourse, *e.g.*, her compliance with Brooks' command for her to take off her underwear, her assumption of a submissive position in the chair, and her closing her eyes and covering her face with her hands so she did not have to look at Brooks as he penetrated her. Viewing this evidence in the light most favorable to the State, a rational factfinder could clearly conclude that J.P. did not consent to the sexual intercourse because she was overcome by fear, *i.e.*, her fear got the better of her; her fear affected or influenced her so strongly as to make her physically helpless; her fear overpowered, conquered, and subdued her. See Webster's Third New International Dictionary 1607 (1993). Even under the dissent's construction of "overcome," a rational factfinder could conclude from this evidence that J.P. did not consent to the sexual intercourse because she was "immobilized or paralyzed" with fear. To find otherwise validates those who espouse a "legitimate rape" theory, *i.e.*, rape as a result of physical violence as the sole means by which a rapist can be held criminally accountable.

Finally, the dissent points to facts present in *Borthwick* (victim testified that she felt "powerless" to stop the defendant's actions) and *Cantrell* (victim testified that she resisted and struggled with defendant, cried, and begged for defendant to stop) as indicating that because those facts were not present in this case, insufficient evidence was offered to show that J.P. was overcome by fear. By making this argument, it appears the dissent is again contending that there are certain behaviors a victim must display—other than the ones J.P. displayed—to convey that he or she was overcome by fear. This assertion would be contrary to *Borthwick*, which stated: "In order to determine whether a rational factfinder could have found beyond a reasonable doubt that a victim of rape has been overcome by force or fear, we consider the record as a whole. *Each case must be decided on its unique facts in arriving at this determination.*" (Emphasis added.) *Borthwick*, 255 Kan. at 911. Notably, *Cantrell* exemplifies this rule; despite no testimony from the

victim stating that she was afraid or in fear; the *Cantrell* court concluded that based on the circumstantial evidence highlighted above, a rational factfinder could infer that the victim was overcome by fear. 234 Kan. at 428-29.

Because we find that sufficient evidence was presented at trial showing that J.P. did not consent to the sexual intercourse because she was overcome by fear, we reverse the Court of Appeal's decision reversing Brooks' rape conviction and affirm that conviction.

❋ ❋ ❋

JOHNSON, J., dissenting: I agree with that part of my colleague's dissent that opines that the evidence in this case is insufficient for a rational jury to find that the sexual intercourse between the defendant, Brooks, and the victim, J.P., occurred because J.P. was overcome with fear. I would simply add two thoughts about the majority's view of the overcome-by-fear element.

First, making the overcome-by-fear element a purely subjective determination, such that a defendant might not have known of the existence or degree of his sexual partner's phobia(s), could raise due process concerns. Second, I fear that the majority's interpretation—equating a woman who bargains away the potential for public embarrassment with a woman whose resistance to being raped has truly been overcome by an actual and immediate fear—might seem to trivialize the trauma and sense of violation that must surely accompany the latter actual-fear scenario.

Where I part company with both the majority and the dissent is with their apparent belief that the evidence established, beyond a reasonable doubt, the threshold requirement that J.P. was "a person who [did] not consent to the sexual intercourse." K.S.A. 2005 Supp. 21-3502(a). In my view, the evidence established that J.P. *did* consent to having sexual intercourse with Brooks. The majority is misdirected by J.P.'s apparent attempt to thwart Brooks' blackmailing scheme by telling him that she did not want to have sex and that the sex would be against her will. When that ploy failed, J.P. understood, as she recited at trial, that there was nothing else she could do, short of having sex with Brooks, to keep him from carrying out his threat to disclose her affair. Thus, she begrudgingly

consented to have sex with Brooks in order to buy his silence. In other words, J.P. made the volitional choice to have sex with Brooks rather than having her extramarital affair disclosed to her boss and her paramour's spouse. That circumstance refutes the nonconsensual element of rape.

In sum, the State proved that Brooks committed a reprehensible act, but it did not prove that he committed the statutory crime of rape. I would affirm the Court of Appeals and reverse the rape conviction.

\* \* \*

MORITZ, J., dissenting: While I agree with the majority's conclusion that the phrase "force or fear" in K.S.A. 2005 Supp. 21-3502(a)(1)(A) does not create alternative means of committing rape, I respectfully dissent from the majority's holding that the State presented sufficient evidence to show that J.P. was overcome by fear. As explained below, the majority's rationale is fundamentally flawed in that it conflates the element of lack of consent with the requirement that the victim be overcome by force or fear and essentially renders the latter requirement meaningless. In this case, while the State presented evidence that the victim did not consent, I would find the evidence fell far short of establishing that the victim was overcome by force or fear. Therefore, I would affirm the Court of Appeals' decision reversing Brooks' rape conviction.

*Evidence of the material element does not equate to evidence of the actus reus.*

In rejecting Brooks' alternative means argument, the majority isolates the phrase "overcome by force or fear" and concludes the *actus reus* of K.S.A. 2005 Supp. 21-3502(a)(1)(A) is "overcome" and the phrase "force or fear" merely describes the material element. But then, in analyzing the sufficiency of the evidence, the majority devotes much attention to construing the material element of "fear," yet fails to fully discuss or apply the *actus reus* or "guilty act," which requires not simply that the victim was *afraid*, but that the victim was *overcome* by that fear. Put another way, the evidence discussed by the majority adequately supports that

J.P.'s fear led her to have nonconsensual intercourse but fails to support that she was overcome by fear. The statute, however, requires proof of both.

Significantly, at several points in its opinion, the majority uses the phrase "immobilized by fear" in place of "overcome by fear," apparently accepting their meaning as synonymous. I do not object to this characterization as it is supported by our caselaw and comports with the meaning of the term "overcome." See *State v. Borthwick*, 255 Kan. 899, 913, 880 P.2d 1261 (1994) ("What renders one person immobilized by fear may not frighten another at all."); Webster's Third New International Dictionary 1607 (1993) (defining "overcome" as "to get the better of" and "to affect or influence so strongly as to make physically helpless or emotionally distraught").

Nor do I disagree with the majority's conclusion that J.P. "clearly feared Brooks would publicize her affair if she did not submit to having sex with him" or that "because of this fear, she ultimately submitted to having nonconsensual sex with Brooks."

Where I diverge from the majority's analysis is with its conclusion that J.P. not only "submitted to" that fear and had nonconsensual intercourse, but that she did so because she was "overcome" by fear. To reach this holding, the majority makes assumptions not borne out by the evidence and ignores other evidence plainly establishing J.P. was never immobilized or paralyzed by her fear.

Namely, J.P. testified that earlier the day of the incident Brooks called her and read the incriminating e-mails to her and warned "everybody is going to pay." After hearing Brooks' threats, J.P. called the coworker with whom she was having the affair to tell him about the threats. J.P. testified that Brooks called again later and told her "this has to happen tonight, meaning that [Brooks] was going to come over for sex that night." Officer Patrick McLaughlin, who later investigated the incident, confirmed that J.P. told him that during her phone call with Brooks, Brooks told J.P. that if she had sex with him, he would not distribute the e-mails.

Thus, the record shows that Brooks made multiple phone calls to J.P. warning her of his plan to come to her home that evening and the reasons for his visit, and J.P. clearly took his threat seriously

as evidenced by her call to her coworker. Yet J.P. did not contact law enforcement.

Instead, as expected, Brooks arrived at J.P.'s home about 8:30 p.m. that evening, and the two had a brief conversation in which Brooks repeated his threat that if she did not have sex with him, he would give the e-mails to her employer and to her coworker's wife.

J.P. did not immediately succumb to Brooks' threats but instead went upstairs to her bedroom, ostensibly trying to put her daughter to sleep, but actually "avoid[ing] having to go back downstairs and face him, and . . . hop[ing] maybe that he would leave." Brooks came upstairs a couple of times to see if the couple's daughter was asleep, but otherwise he remained downstairs. J.P. remained upstairs until after midnight.

Again, despite knowing Brooks' demands, J.P. still did not contact police. J.P. acknowledged that she had a phone in her bedroom and could have called police at any time after Brooks arrived, but she did not do so.

Nor did J.P. contact the police immediately after the incident. Instead, she discussed the incident with a counselor the following day, and the counselor advised her to call the police. But J.P. did not contact the police until she visited with her attorney 3 days after the incident while trying to "get this situation under control" and secure a protection from abuse order. Her attorney also advised she contact the police and made an appointment with a detective for her.

Simply stated, while these may be the actions of someone who succumbed to conspiracy or blackmail, they are not the actions of someone *immobilized* or *paralyzed* by fear. See K.S.A. 21-3428 ("Blackmail is . . . compelling another to act against such person's will, by threatening to communicate accusations or statements about any person that would subject such person or any other person to public ridicule, contempt or degradation."); see also *State v. Daniels*, 215 Kan. 164, 523 P.2d 368 (1974) (upholding blackmail conviction when defendant threatened to distribute compromising pictures of victim unless she paid him $100).

*The only case relied on by the majority is distinguishable.*

Moreover, the only case relied upon by the majority to support its conclusion that the State presented sufficient evidence that J.P. was overcome by fear, *Borthwick*, is critically distinguishable. Specifically, the defendant there challenged the sufficiency of the evidence of fear, and the court focused on that issue in its opinion. A review of the factual circumstances of that case demonstrates this distinction.

Most notably, Borthwick's victim was unable to walk without assistance or stand without support because of an extreme disability. After arriving at the victim's home, the defendant sat on the floor behind her, rubbed her back, lifted her shirt and bra, and nibbled on her ear. Although the victim repeatedly asked Borthwick to stop, he continued, laying her down on the floor, lifting her legs, removing her shorts and underwear, and digitally penetrating her. Borthwick's victim testified she told the defendant to stop and that she tried to keep her legs together, " 'but they always c[a]me apart.' " 255 Kan. at 902. Finally, the physically disabled victim in *Borthwick* felt "powerless" to stop what was happening. 255 Kan. at 902 (discussing and summarizing victim's testimony).

Relying on the victim's testimony, the *Borthwick* court concluded the victim was overcome by her fear. See 255 Kan. at 913-14 (upholding rape conviction and stating that "when a victim testifies that she was overcome by fear, and her testimony is not 'so incredible as to defy belief' [citation omitted], there is sufficient evidence to present the ultimate determination to the factfinder"). In doing so the *Borthwick* court noted that "[w]*hat renders one person immobilized by fear* may not frighten another at all." (Emphasis added.) 255 Kan. at 913.

While *Borthwick* is similar to this case in that neither victim consented to sexual intercourse and both victims "feared" their aggressors, *Borthwick* is critically distinguishable in several respects, all of which pertain to the evidence of the *actus reus*, which requires that the victim be immobilized by that fear.

First, the victim in *Borthwick*, unlike J.P. here, was not threatened before the defendant appeared at her home, nor does the

evidence indicate she had several hours, as did J.P., to contemplate that threat and contact law enforcement to prevent it.

Second, unlike the victim in *Borthwick*, J.P. never testified that her fear of Brooks' threat to turn over the e-mails overwhelmed her, immobilized her, or paralyzed her. Rather, when asked about the nature of her concern she testified: "[I]t's not something [an affair with a married coworker] you want public, you know. . . . I still, you know, he worked there, a lot of people know him and his wife, and a lot of people know me, and just it was not a good situation."

At this juncture, I would note that I reject the majority's characterization of the facts suggesting that Brooks physically overcame J.P. While the majority points out that J.P. testified Brooks became agitated before they had sex, J.P. never testified that this fact had anything to do with her decision to submit to intercourse or intensified her fear. In fact, she specifically clarified that Brooks' threats remained the same despite his agitation.

Finally, while the majority points out that circumstantial evidence can be relied on to show that a rape victim was overcome by fear, the only case it cites to support that proposition, *State v. Cantrell*, 234 Kan. 426, 428-29, 673 P.2d 1147 (1983), *cert. denied* 469 U.S. 817 (1984), is markedly distinguishable. In *Cantrell*, despite the lack of threats or force by the victim, there was ample evidence that the victim was overcome by her fear. Specifically, the victim testified she (1) resisted and struggled with defendant, (2) cried, and (3) begged for defendant to stop.

To be clear, I am not proposing that in order to convict a defendant of rape under K.S.A. 2005 Supp. 21-3502(a)(1)(A), the State must show that the victim physically resisted the defendant. Nor am I suggesting that the defendant is not criminally responsible for his actions here. Instead, I would hold that the State does not prove the *actus reus* of the crime of rape simply by establishing that the victim did not consent and that the victim feared the defendant. Instead, the State must present sufficient evidence that the victim did not consent, that she feared the defendant, and that she was immobilized or paralyzed by that fear. Because the State failed to present evidence of the latter element here, I would affirm

the defendant's two blackmail convictions and reverse his conviction of rape.