NOT DESIGNATED FOR PUBLICATION

No. 113,880

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRAIG W. GUNTHER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed June 17, 2016. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-At-Law, of Lawrence, for appellant.

*Jason Belveal*, county attorney, *Alexandria Morrissey*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFERY E. GOERING, District Judge, assigned.

*Per Curiam*: Craig W. Gunther appeals his jury trial conviction for criminal damage to property, raising only one issue—the sufficiency of the evidence to convict him. We find the evidence was more than sufficient to support the jury's verdict, and we affirm Gunther's conviction.

1

FACTS

Gunther was charged with one count of burglary of an automobile, in violation of K.S.A. 2012 Supp. 21-5807(a)(3), and one count of criminal damage to property (the vehicle) over $1,000 but less than $25,000 in violation of K.S.A. 2012 Supp. 21-5813(a)(1) and (b)(2).

Kena Fleming and Gunther had a sporadic relationship for several years. On July 6, 2013, Fleming and Gunther traveled to Perry Lake in Fleming's white Saturn Vue to meet with Fleming's friends and watch the fireworks show later that evening. Fleming, Gunther, and Fleming's friends were all drinking alcohol at the lake. Fleming and Gunther got into an argument. Fleming stated Gunther became upset and started calling Fleming and her mother names. At one point, Gunther entered Fleming's vehicle and began throwing out "handfuls" of items, including her son's car seat.

Fleming decided to ride home with her friends around 10 p.m., because she was afraid of Gunther's behavior. At the time she left, her vehicle was locked and not damaged.

Around 10 a.m. on July 7, 2013, Kyle Ruona, an officer with the Corps of Engineers at Perry Lake, was patrolling the beach area at Perry Lake. He observed a white Saturn SUV with a window broken and the side mirrors torn from the vehicle. Ruona further noted items from the vehicle thrown near the shoreline, Natural Light beer bottles scattered around the vehicle, a rear wiper blade had been torn off the vehicle, and the flap to the gas cap had been removed. Ruona observed blood on the vehicle in the area near the gas cap. Ruona contacted the Jefferson County Sheriff's Office to report the damaged vehicle.

2

Deputy David Schmitt of the Jefferson County Sheriff's Office responded to Ruona's call. Schmitt noticed the same damage to the vehicle as Ruona. Schmitt ran the license plate and identified the owner of the vehicle as Kena Fleming. Fleming arrived at the scene, spoke with Schmitt, gave a written statement, and then drove her vehicle home.

Schmitt later spoke with Fleming at her residence. Gunther arrived at Fleming's residence while Schmitt was there. Fleming testified that Gunther waved, smirked, and flipped her off when he arrived. Gunther left with Schmitt and two Shawnee County sheriff's deputies to be interviewed. Gunther told Schmitt he and Fleming had previously dated for a year, broken up, and had recently begun talking again. Gunther told Schmitt he and Fleming had spent the previous evening watching the Fourth of July show, he had been drinking, and they had argued. Gunther told Schmitt he had called his mother to come get him. Gunther indicated to Schmitt he was upset because of the argument and began punching chunks of concrete because he was mad that Fleming left him at the lake. Gunther told Schmitt he did not think he had punched Fleming's vehicle but indicated he was pretty drunk. Specifically, Gunther stated, "I don't know how drunk I was, unless I did it and I don't remember." Gunther then said, "I was pretty drunk."

Schmitt noted Gunther's right hand was swollen and had cuts and abrasions along his knuckles and fingers. Gunther told Schmitt he was right-handed. Schmitt testified he had previously investigated numerous crime scenes in cases involving property damage and physical altercations and believed Gunther's injuries were consistent with the damage to the vehicle.

Gunther's mother, Tamah Boyce, testified Gunther called her around 11 p.m. on July 6, 2013, indicating Fleming had left him at the lake and he needed a ride. Boyce reached Gunther sometime after 12 a.m. on July 7, 2013. Boyce observed Fleming's vehicle when she arrived and noticed it had a broken window. Gunther told Boyce he broke the window on Fleming's vehicle in order to get his cell phone. Boyce denied

3

noticing any additional damage to the vehicle; however, Boyce indicated that when she arrived, it was too dark for her to even notice the injuries to Gunther's hand.

Gunther testified he did not have a key to Fleming's vehicle. When they got to the lake, Gunther, Fleming, and Fleming's friends were sitting around Fleming's vehicle drinking. Gunther said he was too intoxicated to drive a vehicle but stated he was functional and his memory was not inhibited. Gunther indicated there were not any parts of the day or evening he did not remember.

Gunther stated he got into an argument with Fleming. He admitted he raised his voice but denied yelling. Gunther indicated the reason for the argument was he felt unappreciated and was upset at the way Fleming's mother had treated him and his mother at a party the night before. Gunther denied using profanity or calling Fleming or her son names but admitted to throwing her son's car seat out of her vehicle. Gunther indicated he and Fleming also had another argument earlier in the day on July 6, 2013, over a picture he wanted to post to Facebook.

Gunther testified he had been using his cell phone throughout the day and his battery charge was under 20 percent, so he plugged his phone into a car charger inside Fleming's vehicle. Gunther indicated he did so around 9:30 p.m. Some time thereafter, Gunther and Fleming began arguing and she decided to leave with her friends. Gunther stated Fleming locked her vehicle prior to leaving. Gunther testified he did not have his cell phone when Fleming left because it was still in her vehicle. However, Fleming testified she saw Gunther with his cell phone after locking her car prior to leaving the lake.

Gunther testified that after Fleming left, he looked around the parking lot area for anyone nearby but could not find anyone. Gunther stated he then decided to break the window on Fleming's vehicle so he could call for a ride by picking up a rock and holding

4

it in his hand to hit and break the window. He indicated his hand went through the window with the rock, cutting his hand. Gunther denied throwing the rock through the window. He stated he removed his cell phone from the charger and attempted to call Fleming's friends. Gunther tried calling them nine times, but they would not come and get him. Gunther testified he called his mother, Boyce, at 11 p.m. He said he had poor reception and his calls to Boyce kept dropping, so Gunther made several calls to Boyce between 11 p.m. and 12:12 a.m. Gunther indicated Boyce arrived sometime between 12:30 a.m. and 1 a.m. on July 7, 2013.

Gunther paced around in the parking lot area while waiting for his mother to arrive. He testified that during that time he was angry and anxious, he experienced a panic attack, and he punched the asphalt in the parking lot. He admitted to breaking the window of Fleming's vehicle but denied doing any other damage to the vehicle. Gunther testified he had been drinking Natural Light beer and that some of the bottles found around Fleming's vehicle were probably his.

Gunther said his mother gave him a ride back to Fleming's house in Topeka where he stayed the night. No one was home when Gunther arrived so he used the key Fleming had given him to enter the house. After he woke up, Gunther attempted to contact Fleming by telephone but could not reach her. Gunther stated he wanted to let Fleming know what happened and to offer to replace her vehicle's window. Gunther testified he felt he needed to break the window to retrieve his cell phone but intended to pay for it afterwards. He denied stealing, intending to steal, or taking anything from Fleming's vehicle that was not his.

The jury found Gunther guilty of criminal damage to property but acquitted him of burglary of an automobile. Gunther was given an underlying sentence of 6 months' imprisonment, suspended to 12 months' unsupervised probation, and was ordered to pay restitution of $500.

Gunther timely appeals challenging only the sufficiency of the evidence to convict him of criminal damage to property.

ANALYSIS

*Was the Evidence Sufficient?*

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or credibility of witnesses. *Williams*, 299 Kan. at 525. It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Gunther argues there was insufficient evidence to convict him of criminal damage to property. He contends the jury should not have convicted him because the only reason he broke Fleming's window was to retrieve his cell phone. Gunther further asserts the State's failure to call Fleming's friends as witnesses brings the jury's verdict into question. Additionally, Gunther contends the jury's decision to acquit him of burglary of an automobile is inconsistent with the jury finding him guilty of criminal damage to property.

6

Gunther's arguments are misplaced. Fleming was the owner of the vehicle. Gunther admits he intentionally broke Fleming's window. It is clear the vehicle was damaged. There was damage in the form of a broken antenna, broken windshield wipers, a broken gas cap door, side mirrors broken off, and the passenger window that had been broken with a rock. Gunther admitted to breaking the window with a rock, and Schmitt testified the damage to portions of the exterior of the vehicle was consistent with someone hitting the vehicle.

Moreover, even if the jury concluded Gunther broke Fleming's window to retrieve his cell phone, it does not preclude the jury from finding he did additional damage to her vehicle. Gunther adamantly denied doing any other damage to Fleming's vehicle and argues there was no direct evidence to the contrary. However, there is no requirement for the State to present direct evidence. A verdict may be supported by circumstantial evidence, if such evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. However, the evidence need not exclude every other reasonable conclusion or inference. A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). Circumstantial evidence does not have to exclude every other reasonable conclusion or inference; it simply must provide a basis from which the factfinder may reasonably infer the existence of the fact in issue. *Brooks*, 298 Kan. at 689. This court has previously held a conviction for criminal damage to property may be based entirely on circumstantial evidence. *State v. Rhoads*, 20 Kan. App. 2d 790, 795-96, 892 P.2d 918 (1995).

Here, there was sufficient circumstantial evidence from which a rational factfinder could infer Gunther did additional damage to Fleming's vehicle beyond his admission to breaking the window. Gunther was in the area near Fleming's vehicle after she left. Fleming testified her vehicle was not damaged when she left,

7

and Gunther does not dispute this fact. Fleming testified that Gunther did not have her permission to use or access her vehicle, and he did not have a key to her vehicle. He admitted to having multiple arguments with Fleming earlier in the day and even admitted to throwing her son's car seat out of her vehicle during one of those arguments. Gunther testified he was angry and anxious while waiting for Boyce to pick him up. Additionally, Gunther testified he had been drinking Natural Light beer that day and that some of the bottles found in and around Fleming's vehicle were probably his. Schmitt noticed Natural Light beer bottles in and around Fleming's vehicle and noted one of the bottles had been shoved into the area where the driver-side mirror had been broken off.

Schmitt also noted blood on the rock inside Fleming's vehicle as well as blood on areas of the exterior of the vehicle that had been damaged. Gunther told Schmitt he did not think he had punched Fleming's vehicle but indicated he was pretty drunk. Schmitt observed Gunther's right hand was swollen and had cuts and abrasions along his knuckles and fingers on his right hand. Gunther told Schmitt he was right-handed. Schmitt testified he had previously investigated numerous crime scenes in cases involving property damage and physical altercations and believed Gunther's injuries were consistent with the damage to the vehicle.

The evidence reflects the damage to Fleming's vehicle was more than $1,000. Fleming testified the cost to repair her vehicle was $1,924.18. The State introduced an invoice for the repairs to Fleming's vehicle which was admitted without objection by Gunther.

A rational factfinder could conclude Gunther damaged Fleming's vehicle beyond just breaking her window. Based on the facts, the jury could infer Gunther had the motive, opportunity, and intent to damage Fleming's vehicle. There was also considerable physical evidence found in and around Fleming's vehicle from

which a rational jury could conclude Gunther damaged her vehicle. The jury was free to make its own determinations as to the weight and credibility of Gunther's and Schmitt's testimony. It is not for this court to determine the same. *Williams*, 299 Kan. at 525. Here, the jury could reasonably infer Gunther did additional damage to Fleming's vehicle. Gunther's argument there was insufficient evidence to support the verdict fails.

*Gunther's Additional Complaints*

Gunther contends the State's decision not to call Fleming's friends as witnesses brings the jury's verdict into question, and the jury's decision to acquit him of burglary of an automobile is inconsistent with its verdict of finding him guilty of criminal damage to property. While these might be interesting points, they are not relevant to the sole issue on appeal—sufficiency of the evidence. We deem it unnecessary to address the complaints and decline to do so.

Affirmed.