NOT DESIGNATED FOR PUBLICATION

No. 114,997

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GEORGE D. NEWELL, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; WILLIAM M. MALCOLM, judge. Opinion filed August 12, 2016. Affirmed.

*John McNish*, of Bolton & McNish LLC, of Marysville, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam*: George D. Newell, Jr., appeals his conviction of one count of lewd and lascivious behavior. Newell claims the charging document was defective depriving the court of jurisdiction to convict him of the crime. He also claims there was insufficient evidence to support his conviction. For the reasons stated herein, we affirm the district court's judgment.

On May 8, 2015, Newell was an inmate of the Clay County Jail and shared a cell with Matthew Cone. Michelle Kopfer, a court services officer, was working at the jail and was monitoring each of the jail cells through security cameras placed in the cells. The

cameras showed most of the area inside each cell, and they were equipped with infrared technology that allowed officers to see inside the jail cells when the lights were off.

At 6 a.m., Kopfer began a shift changeover with Corrections Officer Vernon McGee. When they checked the status of the cells, they noticed that Cone, who was assigned to the top bunk of his cell, was not in his bed. There was a pile of blankets on the bottom bunk, and it was not clear whether Newell was in his bed. The two men had been up all night playing cards at the table in their cell.

Kopfer and McGee continued to monitor the video feed and saw Cone's head in the bottom corner of the monitor. The side of Cone's head was resting on the table and was rhythmically moving forward and backward. Kopfer could not tell who was behind Cone, but she and McGee determined that Newell was not in his bed. McGee went to the cell to determine what Cone and Newell were doing.

McGee turned on the light and looked through the window into the cell. Cone was hunched over standing beside the table with his hand clenching something in front of him. Newell was standing behind Cone. He was shirtless, had his hands in his pants, and was pulling up his pants. After observing Cone and Newell, McGee turned the light off and went back to the booking room.

Kopfer was observing the cell from a monitor on her desk and when McGee turned on the light, she saw Cone move and attempt to pull up his pants. She also saw Newell pull his pants up to his mid-thigh. When McGee returned to the booking room, he and Kopfer saw Newell sit down on the bottom bunk and wipe off his erect penis with a towel or bed sheet. McGee went back to the cell and moved Cone to another cell.

On May 20, 2015, the State charged Newell with one count of lewd and lascivious behavior, a class B misdemeanor, in violation of K.S.A. 2015 Supp. 21-5513(a)(1). A

2

bench trial was held on September 23, 2015. Kopfer and McGee testified at trial on behalf of the State and described what they observed in Newell's jail cell on the morning in question. Kopfer specifically testified that Newell was aware that the corrections officers could see the cells through the security cameras.

After the State rested, Newell moved to dismiss the charge. He argued that the complaint was defective because it did not list the material element that he engaged in "otherwise lawful" sodomy. He also argued that the evidence was insufficient because nobody saw Newell having sex. The district court denied the motion to dismiss. The court ruled that the complaint was not defective because it properly alleged that Newell engaged in sodomy with reasonable anticipation that he was being viewed by others.

Newell did not testify at the trial, but the district court took judicial notice of his testimony from Cone's trial. At Cone's trial, Newell testified that on the morning of the incident he and Cone were making "Magic cards" in the corner of their cell. Newell was standing by the wall next to the table about 3 feet away from Cone, observing Cone, and drying off from his shower. Cone was leaning over the table and rocking back and forth because he could not sit still. Newell finished drying off and put on his boxers and orange pants but not his shirt. Newell testified that he and Cone did not try to hide anything when McGee turned on the light. Newell denied that he ever exposed his penis that morning or wiped off his erect penis with a towel or bed sheet. Newell testified that he was aware that the security camera in the cell was viewed by people in the booking room.

After hearing the evidence, the district court found Newell guilty as charged. The district court sentenced Newell to 4 months and 18 days in jail but gave him credit for time served. On September 25, 2015, Newell filed a motion for arrest of judgment. In the motion, Newell argued that the complaint was defective because it omitted the element that the sexual act was otherwise lawful. The district court denied Newell's motion for arrest of judgment on November 12, 2015. Newell filed a notice of appeal.

3

On appeal, Newell first claims the district court lacked jurisdiction to convict him of the crime because the charging document was defective. Specifically, Newell argues that the complaint combined the two separate and distinct ways to commit lewd and lascivious behavior under K.S.A. 2015 Supp. 21-5513 into a single "hybrid-type" crime, which placed him at a substantial disadvantage to try to determine the nature of the charge. In district court, Newell had argued that the complaint was defective because it had omitted the material element that he engaged in "otherwise lawful" sodomy, but Newell has not renewed this argument on appeal. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2015) (issue not briefed by appellant is deemed waived and abandoned).

The State admits that the complaint contained language from both K.S.A. 2015 Supp. 21-5513(a)(1) and (a)(2). However, the State argues that inclusion of language from both subsections does not make the complaint defective or deprive the court of jurisdiction. The State asserts that Newell was not prejudiced because his theory of defense was that no sexual intercourse occurred between him and Cone. The State also notes that the language of the complaint was couched in the language of the statute.

Newell challenged the sufficiency of the charging document at his trial and also by filing a motion for arrest of judgment immediately after the trial. An appellate court has unlimited review over a challenge to the sufficiency of a charging document. *State v. Dunn*, 304 Kan. ___, ___ P.3d ___, No. 106,586, filed July 15, 2016, slip op. at 55-56.

At the time of Newell's trial, the watershed case in Kansas on the sufficiency of a charging document was *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990). According to the test established in *Hall*, if the defendant challenged the sufficiency of the complaint in district court through a motion for arrest of judgment, the complaint was deemed defective and failed to confer jurisdiction upon the court if it omitted "one or more of the

essential elements of the crime it attempts to charge." 246 Kan. at 747. If the defendant challenged the sufficiency of the complaint for the first time on appeal, the conviction would only be reversed if the defendant could show that the alleged defect (1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial under the United States and Kansas constitutions. 246 Kan. at 765.

After the parties filed their briefs in this case, the Kansas Supreme Court overruled *Hall* in *Dunn*. In that case, after a bench trial, the district court convicted Dunn of multiple crimes, including a count of forgery. Dunn argued for the first time on appeal that the charging document lacked multiple elements required by the forgery statute, failed to specify a means of committing the forgery, and failed to allege that he did not have the authority to pass the check in question. Dunn claimed that the defects prejudiced him because he could not defend against a noncrime. The Court of Appeals affirmed the conviction under the analysis established in *Hall*. Slip op. at 8-9. After the Kansas Supreme Court granted Dunn's petition for review, Dunn argued that it should overrule *Hall*.

The Kansas Supreme Court first considered the impact of *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). Slip op. at 10-11. In *Cotton*, the United States Supreme Court reversed a lower court's holding that omission of an essential element from an indictment deprived the court of jurisdiction. Slip op. at 16. Considering *Cotton* and other federal cases, the Kansas Supreme Court concluded that federal law no longer supports a rule that subject matter jurisdiction requires a charging document to include every element of a crime. Slip op. at 19. Our Supreme Court determined that if such a rule exists, it must be grounded in state law. Slip op. at 19.

Our Supreme Court painstakingly examined the historical support in Kansas for *Hall*'s rule that the charging document confers subject matter jurisdiction, and the court

5

found that support for such a rule was inconsistent. Slip op. at 20-36. For a long time, charging documents "merely needed to show that a criminal case had been filed in the correct court,"—for example, the district court instead of municipal court—"that the court's exercise of territorial jurisdiction would be appropriate,"—for example, that a crime committed in Johnson County was filed in Johnson County District Court, not a district court with no territorial connection to the crime—"and that the facts alleged would constitute a crime under Kansas statutes." Slip op. at 33. *State v. Minor*, 197 Kan. 296, 416 P.2d 724 (1966), held that charging documents had to state every statutory element of the alleged crime for the district court to have subject matter jurisdiction, but Kansas courts applied this rule inconsistently. Slip op. at 33-36.

In 1990, *Hall* created a new, prospective rule: the omission of an element of a crime from a charging document required reversal for lack of subject matter jurisdiction only if the omission was raised before, during, or soon after the trial. If the issue was not raised until direct appeal or later, reversibility was considered under a more forgiving State-friendly analysis. This created a bifurcated standard of review dependent largely upon timing. Slip op. at 39-41. Recognizing the instability in this approach, the *Dunn* court explicitly overruled *Minor*'s holding that a charging document bestows subject matter jurisdiction on a court. Slip op. at 45-46. Instead, our Supreme Court determined that the Kansas Constitution is the source of Kansas courts' jurisdiction to adjudicate criminal cases; charging documents need only show that the case was filed in the correct court, show the court has territorial jurisdiction, and allege facts that, if proved beyond a reasonable doubt, show the defendant committed a Kansas crime. Slip op. at 46.

Our Supreme Court also overruled *Minor*'s requirement that a charging document must include all the essential elements of the charged offense. Slip op. at 46. Instead, a Kansas charging document is sufficient if it alleges *facts* that establish that the defendant committed a Kansas crime. Slip op. at 46-47. Failure to include sufficient facts does not divest the Kansas court of jurisdiction. Instead, the failure to allege sufficient facts may

6

result in findings that the State has failed to *invoke* the court's subject matter jurisdiction and has failed to satisfy the requirements of K.S.A. 22-3201(b) that a charging document state "essential facts" and be "drawn in the language of the statute." Slip op. at 46-47. The *Dunn* court noted, however, that a charging document may be constitutionally deficient if it fails to provide the defendant with constitutionally required notice or due process under the United States Constitution. Slip op. at 49-50.

The *Dunn* court determined that a charging document is defective when the document (1) does not show that the Kansas Constitution's requirement of the correct court and territory have been satisfied; (2) does not allege facts that, if proved beyond a reasonable doubt, show the commission of a Kansas crime; and (3) does not meet constitutional standards for due process and notice. Slip op. at 51. None of these "defects prevents or destroys the existence of subject matter jurisdiction over criminal cases in our district and appellate courts." *Dunn*, slip op. at 51. The defects in charging documents are now subject to the general rule that issues may not be raised for the first time on appeal; in order to do so, defendants must demonstrate on appeal that an exception to this rule applies. Slip op. at 53-55. In addition, the applicable standard of review for challenges based on any of the three types of defects is de novo. Slip op. at 55-56.

The *Dunn* court indicated that if a charging document fails to recite that the case was brought in the right court or territory or if it mistakenly states that the case was brought in the wrong court or wrong territory, that defect may be curable by amendment before verdict under K.S.A. 22-3201(e). Slip op. at 52. The failure to declare the correct court and territory does not divest a court of jurisdiction if the case was, in fact, brought in the correct court and that court has territorial jurisdiction.

Finally, the *Dunn* court indicated that any failure to state facts that would constitute a Kansas crime may be more serious and should be corrected as soon as possible. Slip op. at 52. The court held:  "If the State is forced to concede on appeal . . .

7

that the language of its charging document failed to state facts constituting a Kansas crime, it will be limited to arguing lack of preservation of the issue . . . or harmlessness" of the error. Slip op. at 53. That is because this error is, at its core, the failure to comply with the requirements of K.S.A. 22-3201(b) that a charging document state "essential facts." In this situation, the statutory harmlessness test under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105 will apply. Slip op. at 58. The third type of error—constitutional notice and due process issues—also becomes more difficult to remedy the longer it persists, but if the challenge stems from constitutional provisions, the constitutional error harmlessness test will control. Slip op. at 53.

Returning to our facts, the complaint in Newell's case stated:

"That on or about the 8th day of May, 2015, the said GEORGE D. NEWELL, JR., did then and there being unlawfully, knowingly, intentionally, and without authority, within CLAY COUNTY, KANSAS, publicly engaged in sodomy with the knowledge or reasonable anticipation that the participants are being viewed by others, with the intent to arouse or gratify the sexual desires of the offender or another, to-wit: had consensual sex with Matthew Cone in view of the security cameras in the Clay County Jail, LEWD AND LACIVIOUS BEHAVIOR, in violation of K.S.A. 21-5513(a)(1), a Class B Nonperson Misdemeanor."

K.S.A. 2015 Supp. 21-5513(a)(1) states: "Lewd and lascivious behavior is: [p]ublicly engaging in otherwise lawful sexual intercourse or sodomy with knowledge or reasonable anticipation that the participants are being viewed by others." A violation of subsection (a)(1) is a class B misdemeanor. K.S.A. 2015 Supp. 21-5513 (a)(2) states: "Lewd and lascivious behavior is: publicly exposing a sex organ or exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another." A violation of subsection (a)(2) is a severity level 9 person felony. These two

8

subsections are alternative means of committing lewd and lascivious behavior. *State v. Brown*, 295 Kan. 181, 202, 284 P.3d 977 (2012).

Newell makes no claim that the charging document in his case fails to recite that the case was brought in the right court or territory. Essentially, Newell is claiming that the charging document does not allege facts showing the commission of a Kansas crime. Newell challenged the sufficiency of the charging document in district court by filing a motion for arrest of judgment; thus, we conclude the issue is preserved for appeal.

On appeal, Newell argues that the complaint combined the two separate and distinct ways to commit lewd and lascivious behavior under K.S.A. 2015 Supp. 21-5513 into a single "hybrid-type" crime, which placed him at a substantial disadvantage to try to determine the nature of the charge. As the district court noted, it appears the State attempted to blend the two alternative means of committing lewd and lascivious behavior. The complaint alleges that Newell committed lewd and lascivious behavior largely by using the language of K.S.A. 2015 Supp. 21-5513(a)(1). But the complaint also included the language from K.S.A. 2015 Supp. 21-5513(a)(2) that Newell engaged in sodomy "with the intent to arouse or gratify the sexual desires of the offender or another."

Under *Dunn*, any deficiency in the charging document does not implicate subject matter jurisdiction. Slip op. at 45-46. Moreover, the *Dunn* court overruled *Minor*'s requirement that a charging document include all the essential elements of the charged offense. Slip op. at 46. Nevertheless, if the charging document in Newell's case failed to allege facts that establish that Newell committed a Kansas crime, the charging document failed to comply with the requirements of K.S.A. 22-3201(b) that it state "essential facts" and be "drawn in the language of the statute." *Dunn*, slip op. at 46-47. In such an instance, we would review the error applying the statutory harmlessness test under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105. Slip op. at 58.

9

Here, Newell is claiming that the charging document was defective because it included *additional language* found in K.S.A. 2015 Supp. 21-5513(a)(2) that Newell must have had the intent to arouse or gratify his sexual desires or the sexual desires of another. However, the fact that the complaint included additional and unnecessary language does not make it defective. Newell was convicted of violating K.S.A. 2015 Supp. 21-5513(a)(1), and the complaint alleged essential facts to show the commission of a Kansas crime, *i.e.*, that Newell publicly engaged in sodomy with knowledge or reasonable anticipation that the participants were being viewed by others. As a result, the complaint charging Newell with lewd and lascivious behavior was not defective. Because there was no error, we are not required to engage in harmless error analysis.

### SUFFICIENCY OF THE EVIDENCE

Next, Newell claims there was insufficient evidence to support his conviction of lewd and lascivious behavior. Newell's argument focuses on the lack of direct evidence that he and Cone engaged in sodomy. Newell points out that the security camera video was not presented at trial, McGee and Kopfer did not see Cone and Newell engage in sodomy, and the State did not collect as evidence the towel or bedsheet on which Newell allegedly wiped his erect penis.

The State responds that it was not required to prove that Newell was being viewed by others; it was only required to prove that Newell had knowledge or reasonably anticipated that he was being viewed by others. The State points out that Newell knew that security cameras were used by the corrections officers to monitor his cell and that the cell window allowed anyone passing in the hallway to see into the cell.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have

10

found the defendant guilty beyond a reasonable doubt based on the evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). When evaluating the sufficiency of the evidence, an appellate court will not reweigh the evidence or reassess the credibility of the witnesses. 299 Kan. at 525.

We will limit our analysis of this issue to the argument asserted by Newell. As previously stated, Newell's argument focuses on the lack of direct evidence that he and Cone engaged in sodomy. Newell is correct that the State did not present video of the sodomy, Kopfer and McGee did not see the sodomy, and there is no physical evidence that sodomy occurred. But a conviction of even the gravest offense can be based entirely on circumstantial evidence as long as it provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). The testimony of Kopfer and McGee provided a basis for the district court to reasonably infer that Newell engaged in sodomy. The officers testified that they saw:  (1) Cone's head moving rhythmically back and forth on the table; (2) Cone hunched over the table with Newell behind him; (3) Newell pull up his pants when McGee turned on the light; and (4) Newell wiped his erect penis with a towel or bedsheet.

Moreover, Newell acknowledged that he was aware that his actions in the jail cell could be viewed by the officers in the booking room on the security cameras. Also, the evidence established that Newell was aware that his jail cell had a window open to the hallway and anyone passing through the hallway could see into the cell. We find that this evidence, viewed in the light most favorable to the State, was sufficient to establish that Newell engaged in sodomy with knowledge or reasonable anticipation that the participants were being viewed by others. Thus, we conclude that the evidence was sufficient to support his conviction of lewd and lascivious behavior.

Affirmed.

11