IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,504

STATE OF KANSAS,
*Appellee*,

v.

RYAN DAVID REYNOLDS,
*Appellant.*

SYLLABUS BY THE COURT

1.

The State may charge a defendant with a single offense that can be committed in more than one way. This is called an alternative means crime. A district court presents an alternative means crime to a jury when its instructions incorporate a statute's multiple means for a charged crime's single statutory element.

2.

K.S.A. 2017 Supp. 21-5807(b) describes alternative means for committing aggravated burglary that depend, in part, on where the crime occurs—a dwelling, a nondwelling building, or a means of conveyance.

3.

K.S.A. 2017 Supp. 21-5807(b) criminalizes entering into or remaining within a dwelling, a nondwelling building, or a means of conveyance, in which a human being is present, "with intent to commit a felony." The quoted element is not limited to any particular felony.

1

4.

If a defendant claims a jury instruction contained an alternative means error, the reviewing court must consider whether the instruction was both legally and factually appropriate. The court will use unlimited review to determine whether the instruction was legally appropriate and will view the evidence in the light most favorable to the requesting party when deciding whether the instruction was factually appropriate. Upon finding error, the court will then determine whether that error was harmless, using the test and degree of certainty set forth in *State v. Plummer*, 295 Kan. 156, 283 P.3d 202 (2012), and *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). Contrary language in *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010), *disapproved of on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014), and its progeny is disapproved.

5.

Unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis under K.S.A. 22-3414(3).

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 17, 2022. Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Oral argument held March 31, 2023. Supplemental briefing completed December 26, 2023. Opinion filed July 12, 2024. Judgment of the Court of Appeals affirming the district court is affirmed on the issues subject to review. Judgment of the district court is affirmed on the issues subject to review.

*Kai Tate Mann*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi Litfin*, deputy district attorney, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Armed with a handgun, Ryan Reynolds broke into his estranged wife's house through a downstairs door used for her salon business. He went upstairs to the living area, where he confined his wife, their young daughter, and his wife's sister-in-law. He threatened to kill everyone inside. The two women eventually escaped with the child, and police apprehended Reynolds as he was leaving. A jury convicted him of multiple crimes arising from this incident. A Court of Appeals panel affirmed his convictions for aggravated burglary and aggravated endangering a child. *State v. Reynolds*, No. 121,504, 2022 WL 2188164, at *1 (Kan. App. 2022) (unpublished opinion). Both Reynolds and the State challenge that decision. We affirm on the issues subject to review, although our analysis differs from the panel's.

In particular, we agree with Reynolds that the district court presented the aggravated burglary charge to the jury as an alternative means crime in the instructions by referring to both a building and a dwelling as locations for committing the offense. And we agree with Reynolds that the State's evidence did not support the building alternative, so we must confront our caselaw requiring his conviction's automatic reversal. See *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010), *disapproved of on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014). To that end, we ordered additional briefing and now reject *Wright*'s inflexible rule that requires substantial evidence supporting each means of a criminal element included in an instruction to uphold a conviction. *Wright*, 290 Kan. 194, Syl. ¶ 2.

In *Wright*'s place, we employ our familiar instructional error analysis. And on that basis, we hold the aggravated burglary instruction in Reynolds' case was factually inappropriate but of no consequence. We have no hesitation concluding the jury understood all occupants were in the upstairs living area during the intrusion and found Reynolds guilty of aggravated burglary of a dwelling. None of the evidence confuses that reality, and the jury can be relied on to do what the district court instructed it to do—

3

apply the law to the only evidence available in arriving at its verdict. See *Griffin v. United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991) (holding due process does not require setting aside general guilty verdict in a multiple-object conspiracy when evidence supported only one object); *State v. De La Torre*, 300 Kan. 591, Syl. ¶ 3, 331 P.3d 815 (2014) (holding the clearly erroneous harmless error standard applied in a multiple acts case when unanimity instruction not requested or its absence not objected to).

FACTUAL AND PROCEDURAL BACKGROUND

Reynolds' wife, Kayla, filed for divorce in July 2017. A court awarded her temporary possession of their home with a lower-level salon, where she worked as a cosmetologist. She lived upstairs with the couple's daughter.

About 6:15 a.m., on November 4, 2017, Kayla heard loud banging on an exterior door to the house. She gathered in a bedroom with her daughter and sister-in-law, Lynzie, who had stayed overnight. Lynzie said Reynolds was outside. He pounded on the windows and told Kayla not to call the police, but she did anyway. While on the phone with a dispatcher, Kayla heard crashing noises downstairs in the salon and sounds of Reynolds coming up the stairs before he kicked in the bedroom door. She testified he was "out of control" and yelling things about "money and saving the world." He kept trying to grab their daughter.

Reynolds pulled out a handgun, screaming that he loved his daughter. He said he would hurt "whoever was there" and was "going to kill everyone." Lynzie testified he kept asking where the other people in the house were. At some point, he told the dispatcher he would kill everybody there.

4

Kayla and Lynzie said Reynolds positioned himself in front of the room's only exit and stopped them from leaving. Lynzie persuaded him to search the house to prove no one else was there. As he stepped out, they ran away and went to a neighbor's home. Reynolds followed, yelling for Kayla to come back. Police officers stopped him as he pulled his car out of the driveway. They took him into custody after a two-hour standoff.

A jury convicted Reynolds of aggravated burglary, two counts of aggravated assault, criminal threat, aggravated endangering a child, interference with law enforcement, stalking, and two counts of criminal damage to property. The district court sentenced him to a controlling term of 180 months in prison and 36 months of postrelease supervision.

Reynolds appealed the aggravated burglary, aggravated child endangerment, and criminal threat convictions. A Court of Appeals panel reversed the criminal threat conviction but upheld the others. *Reynolds*, 2022 WL 2188164, at *1. Reynolds asked for our review of the aggravated burglary and aggravated child endangerment convictions. He also renews a cumulative error claim. The State conditionally cross-petitioned seeking review of the panel's aggravated burglary conviction analysis. The State did not challenge the criminal threat conviction's reversal, so that much is settled in Reynolds' favor. See *State v. Moler*, 316 Kan. 565, 569, 519 P.3d 794 (2022); Supreme Court Rule 8.03(i)(1) (2024 Kan. S. Ct. R. at 59).

We granted both requests for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

5

AGGRAVATED BURGLARY: ALTERNATIVE MEANS
(BUILDING OR DWELLING)

The State may charge a defendant with a crime that can be committed in more than one way. This is called an alternative means crime. See *State v. Rucker*, 309 Kan. 1090, 1094, 441 P.3d 1053 (2019). A district court presents an alternative means crime to a jury when its instructions on a charged offense incorporate multiple means for a single statutory element. *State v. Sasser*, 305 Kan. 1231, 1239, 391 P.3d 698 (2017). Reynolds argues the district court presented the aggravated burglary offense to the jury as an alternative means crime by separately identifying both a building and a dwelling as locations for committing the offense. We agree with him.

*Additional facts*

A grand jury indicted Reynolds with one count of aggravated burglary, charged as a level four, person felony—the severity level specified only for aggravated burglary of a dwelling. K.S.A. 2017 Supp. 21-5807(b) provides:

> "(b) Aggravated burglary is, without authority, entering into or remaining within any:
>
> (1) Dwelling in which there is a human being, with intent to commit a felony, theft or sexually motivated crime therein;
>
> (2) building, manufactured home, mobile home, tent or other structure which is not a dwelling in which there is a human being, with intent to commit a felony, theft or sexually motivated crime therein; or
>
> (3) vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is a human being, with intent to commit a felony, theft or sexually motivated crime therein."

The district court drew from this statutory language to craft its aggravated burglary instruction for the jury's deliberation:

"The defendant is charged in Count 4 with aggravated burglary. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant entered into or remained in a *building or dwelling*.

"2. The defendant did so without authority.

"3. The defendant did so with the intent to commit kidnapping, aggravated assault or criminal threat therein.

"4. At the time there was a human being in the building or dwelling.

"5. This act occurred on or about the 4th day of November, 2017, in Shawnee County, Kansas." (Emphasis added.)

Reynolds highlights the terms, "building or dwelling," as dual means for the crime's location element. The jury's general verdict form simply recited: "We, the jury, find the defendant guilty of the crime of Aggravated Burglary as charged in Count 4." It did not differentiate between the two terms.

*The district court's instruction set out alternative means*

Reynolds argues the instructions set out alternative means for the crime's location element. He is correct. K.S.A. 2017 Supp. 21-5807(b) identifies building and dwelling in

7

different subsections and each describes materially distinct situations. See *State v. Williams*, 303 Kan. 750, 757, 368 P.3d 1065 (2016) ("The legislature typically signals its intent to create an alternative means by 'separating alternatives into distinct subsections of the same statute.'"); *State v. Davis*, 312 Kan. 259, 266, 474 P.3d 722 (2020) (looking to whether "there is a material difference between the" alleged alternative means). We hold K.S.A. 2017 Supp. 21-5807(b) describes alternative means for committing aggravated burglary that depends, in part, on where the crime occurs—a dwelling, a nondwelling building, or a means of conveyance.

We also easily agree Reynolds' case presents what we would consider an alternative means error. The uncontroverted evidence shows he entered the unoccupied lower-level salon, went upstairs, and broke into the occupied living quarters. And on that basis, he notes the obvious—no one was in the salon, so no evidence supports convicting him of aggravated burglary of a nondwelling building, one of the two instructed means.

Under our current precedent, when a defendant raises an alternative means issue, a reviewing court applies what we refer to as *Wright*'s super-sufficiency test. 290 Kan. at 206. But the State asks us to reconsider that caselaw, so we do that next.

*Deciding on the correct law to apply*

Under super-sufficiency, if a jury instruction presents an alternative means crime, the court decides whether sufficient evidence supports each means. If not, the court reverses the conviction, because only automatic reversal "ensure[s] a criminal defendant's statutory entitlement to jury unanimity." *Wright*, 290 Kan. at 206. And if we continue following *Wright*, we must reverse Reynolds' aggravated burglary conviction because all the victims were in the upstairs dwelling during the incident.

But automatic reversal assumes jury unanimity—the foundation on which *Wright* rests—is a genuine concern here, despite everyone agreeing all occupants were upstairs. Said differently, why can't we employ harmless error to conclude the jury unanimously convicted Reynolds on the only means for which there was evidence of human presence—the dwelling? See *State v. Brown*, 295 Kan. 181, 218, 284 P.3d 977 (2012) (Moritz, J., concurring) ("[W]hen we instruct a jury on a legal means for committing a crime for which there is *no* evidence and an alternative means of committing the same crime for which there *is sufficient* evidence and the jury convicts the defendant of that crime, we can reliably conclude it did so unanimously upon the *only* means for which there was evidence.").

To illustrate, consider a hypothetical prosecution for aggravated criminal sodomy with a child victim much like the scenario in *State v. Dern*, 303 Kan. 384, 362 P.3d 566 (2015). There, the district court mistakenly instructed the jury that

> "'[s]odomy means:  (1) oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; (2) *oral or anal sexual relations between a person and an animal*; (3) *sexual intercourse with an animal*; or (4) anal penetration, however slight, of a male or female by any body part or object.'" (Emphases added.) 303 Kan. at 396.

Now assume the evidence supports convicting on the first and fourth means involving human beings, but no evidence exists as to the second and third means involving animals. How does it make any sense to require the conviction's reversal and a new trial over a worry that jurors somehow mixed up the alleged sex with a child for sex with an animal? Yet reversal is what our caselaw currently demands for our hypothetical because *Wright* uniquely equates this juror unanimity concern with structural error. Some course correction seems appropriate. After all, "jurors *are* well equipped to analyze the evidence." *Griffin*, 502 U.S. at 59.

9

This concern is not new. Our court has struggled for decades over the consequences for a defendant's conviction when the jury instructions presented one or more alternative means not factually supported by the evidence. And no viewpoint has left this back-and-forth unscathed. See Mott, *Alternative Means Jurisprudence in Kansas: Why* Wright *Is Wrong*, 62 U. Kan. L. Rev. 53, 53 (2013) ("Untied from any mooring, alternative means jurisprudence in Kansas has drifted into a strange and confusing world where 'secondary matters' infest every corner of the criminal code.").

No doubt this conundrum accounts for the string of past cases taking different views at different times. For instance, in *State v. Wilson*, 220 Kan. 341, 344, 552 P.2d 931 (1976), *disapproved of on other grounds by State v. Quick*, 226 Kan. 308, 317, 597 P.2d 1108 (1979), the court sustained a first-degree murder conviction based on "duplicate theories" of premeditated murder and felony murder because the evidence supported both theories, avoiding any need to discuss a remedy. Sixteen years later, the court rejected jury unanimity concerns and upheld three first-degree murder convictions, even though sufficient evidence supported only one alleged alternative theory for each conviction. *State v. Grissom*, 251 Kan. 851, 893, 840 P.2d 1142 (1992). The *Grissom* court did not explicitly employ a harmless error model, but its reasoning resembled it.

Nearly two years later, the court again avoided remedy by noting sufficient evidence existed for each alternative means alleged in *State v. Timley*, 255 Kan. 286, Syl. ¶ 1, 875 P.2d 242 (1994), *disapproved of on other grounds by Brooks*, 298 Kan. 672. But it returned to harmless error when the evidence did not support each alternative means in *State v. Dixon*, 279 Kan. 563, 606, 112 P.3d 883 (2005) (relying on *Grissom*). Three years later, the court detoured to an instructional error paradigm for a remedy in an aggravated burglary case in *State v. Cook*, 286 Kan. 1098, 1108, 191 P.3d 294 (2008) (conducting clear error analysis). And two years after that, the *Wright* court imposed its

10

super-sufficiency test, requiring sufficient proof for all alternative means to avoid reversal. *Wright*, 290 Kan. at 205-06.

But over the next 14 years, detractors to *Wright*'s do-or-die test persisted in questioning whether it supplies an appropriate remedy. See, e.g., *Brown*, 295 Kan. at 226-27 (Moritz, J., concurring) (proposing modified harmless error analysis to affirm a conviction when sufficient evidence supports one means and no evidence supports another but reverse when there is sufficient evidence of one means and insufficient evidence of the other); *Dern*, 303 Kan. at 415 (Biles, J., concurring in part) (characterizing a conviction's reversal under *Wright*'s super-sufficiency rule as "nonsensical" under the case facts; suggesting adoption of a harmless error test); *Dern*, 303 Kan. at 417 (Johnson, J., concurring in part) (rejecting modified approach but expressing amenability to harmless error); *State v. Johnson*, 310 Kan. 835, 845, 450 P.3d 790 (2019) (Stegall, J., dissenting) (arguing for modified harmless error); Mott, 62 U. Kan. L. Rev. at 91-92 ("When a trial court makes an alternative means error in Kansas by allowing a jury the option of convicting a defendant on a factually inadequate statutory theory, the harmless error statute should apply no matter how . . . [the] judicially-enhanced definition of alternative means might classify the elements in question.").

No doubt sensing this continued angst with *Wright*'s reasoning, the State argues we should overrule it if we accept Reynolds' claim that alternative means error occurred. Reynolds did not respond to the State's suggestion initially. But we discussed it at oral argument and ordered additional briefing on the matter, including asking for any other appropriate approach to determine a remedy short of structural error. Predictably, Reynolds embraces *Wright* and demands a new trial on the dwelling alternative, while the State again urges us to overrule *Wright* and replace it with a typical harmless error analysis, citing *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), and *State v. Plummer*, 295 Kan. 156, 283 P.3d 202 (2012).

11

Disapproving precedent is not taken lightly. In *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 2-3, 378 P.3d 1060 (2016), the court restated the cautions embedded within our stare decisis doctrine:

"2. Once a point of law has been established by a court, it will generally be followed by the same court and all courts of lower rank in subsequent cases when the same legal issue is raised. Stare decisis operates to promote system-wide stability and continuity by ensuring the survival of decisions that have been previously approved by a court. The application of stare decisis ensures stability and continuity—demonstrating a continuing legitimacy of judicial review. . . .

"3. Stare decisis is not a rigid inevitability but a prudent governor on the pace of legal change. A court of last resort will follow that rule of law unless clearly convinced it was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent."

Still, the *Sherman* court overruled *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004) (requiring a particularized harmlessness inquiry for prosecutorial misconduct cases), reasoning its circumstance did not compel stare decisis and the new rule would bolster justice. Cf. *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, Syl. ¶ 6, 89 P.3d 573 (2004) ("Considerations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved.").

Reynolds asserts overruling *Wright* will do more harm than good. He maintains "*Wright* incentivizes prosecutors to provide clear articulate theories for a jury to consider," while harmless error would weaken an accused's jury unanimity right, creating an endless series of appeals to determine whether an error is harmless. The State insists on a departure, arguing *Wright* was originally flawed. We agree with the State.

12

*Wright* says it finds its source of law from Kansas statute, so we start with that statute to see how well *Wright* holds up. See 290 Kan. at 201 ("Jury unanimity on guilt in a criminal case is statutorily required in Kansas. See K.S.A. 22-3421."); *State v. Young*, 313 Kan. 724, 728, 490 P.3d 1183 (2021) ("Statutory interpretation begins with the words of the statute because the words chosen by the Legislature are the best expression of legislative intent."). K.S.A. 22-3421 provides:

> "The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and the inquiry made whether it is the jury's verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case. If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged."

This plain and unambiguous language requires that a jury render its verdict without any disagreement, meaning the verdict must be unanimous, i.e., a general verdict. The Kansas Code of Criminal Procedure, K.S.A. 22-2101 et seq., does not define "verdict," but in a criminal prosecution, "'the only proper verdicts to be submitted . . . are "guilty" or "not guilty" of the charges.'" *State v. Obregon*, 309 Kan. 1267, 1278, 444 P.3d 331 (2019) (quoting *State v. Osburn*, 211 Kan. 248, 256, 505 P.2d 742 [1973]); *Osburn*, 211 Kan. at 255 (noting Kansas criminal procedure does not provide for submitting special questions to a jury).

On its face, K.S.A. 22-3421 simply demands a jury's unanimous "guilty" decision and nothing more. But the *Wright* court added something not found in the statute:

> "2. In an alternative means case, there must be jury unanimity as to the crime charged, *but not as to the particular means by which the crime was committed, so long as*

13

> *substantial evidence supports each means*." (Emphasis added.) *Wright*, 290 Kan. 194,
> Syl. ¶ 2.

As readily seen, the italicized language has no obvious statutory origin.

More importantly, *Wright* rushed to formulate a remedy even though none was required under its facts. See 290 Kan. at 206 ("The evidence in this case was sufficient to find Wright guilty beyond a reasonable doubt of committing rape by force or fear."). For unexplained reasons, *Wright* prescribed a solution—structural error—for a problem not presented by the case. It did this by imposing what it termed a "'super-sufficiency'" rule it found in another case. See 290 Kan. at 203 (discussing *Timley*, 255 Kan. 286; declaring, "If evidence had been lacking on either means alleged, Timley's rape conviction would have been reversed.").

But *Timley* said nothing about reversal or remedy because there was no alternative means error in that case either. See *Timley*, 255 Kan. at 290 ("Timley's counsel readily points out that there was evidence from which the jury could determine that each sexual act was the result either of force, based on Timley's choking the victims, or of fear, based on the threats Timley made to the victims."). So how did *Wright* deduce that Timley's conviction would have been reversed in a factual situation not presented? We have no clue. And why would it matter anyway when *Wright*'s facts did not require a remedy because evidence supported both alternative means? *Wright*'s logic was imagined.

*Wright* references a law review article, Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275 (2005), which advocated for automatic reversal when super sufficiency is absent based on a general citation to a death penalty case with an erroneous reasonable-doubt jury instruction. See Beier, 44 Washburn L.J. at 299 (citing *Sullivan v. Louisiana*, 508 U.S.

14

275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 [1993]). But the exceptional remedy necessary to address the pervasive harm to a trial's fairness created by a faulty reasonable-doubt instruction is hardly comparable to any concerns emanating from K.S.A. 22-3421's general verdict provisions. See *Johnson*, 310 Kan. at 913 (defining structural error as rare and so pervasive it defies harmless error analysis). So neither *Timley* nor the referenced law review article justifies the unnecessary remedy *Wright* seemed compelled to conjure.

To be sure, K.S.A. 22-3421 does not demand super sufficiency; it simply says, "If any juror disagrees, the jury must be sent out again." But other statutes do give direction for addressing trial errors and they consistently specify harmless error review. For example, K.S.A. 2023 Supp. 60-261 straightforwardly provides:

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Similarly, K.S.A. 60-2105 states:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

Taken together, these statutes direct appellate courts to address trial error by reversing convictions only when it prejudices a defendant's substantial rights and the

15

party benefiting from the error fails to show there is no reasonable probability the error affected the trial's outcome in light of the entire record. See *Brown*, 316 Kan. at 162; Black's Law Dictionary 1584 (11th ed. 2019) (defining "substantial right" as "[a]n essential right that potentially affects the outcome of a lawsuit and is capable of legal enforcement and protection, as distinguished from a mere technical or procedural right"). This is a classic harmless error approach used every day by our appellate courts. Yet alternative means error stands as an outlier, even though *Wright* characterizes it as a statutorily based issue. *Wright*, 290 Kan. at 201.

An even more specific option emerges in K.S.A. 22-3414(3), because any argument there was insufficient evidence to support each alternative means presented actually challenges the instruction's factual appropriateness. See *State v. Wimbley*, 313 Kan. 1029, 1033, 493 P.3d 951 (2021) ("Factual appropriateness depends on whether sufficient evidence . . . supports the instruction."). And that statute's analytical rubric straightforwardly directs:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

But *Wright* shuns harmless error paradigms under the pretext of statutory juror unanimity and substitutes a court-created remedy mandating reversal unless sufficient evidence supports every instructed means. This is evident when *Wright* explained:

"'[A] reversal mandated by *Timley* is a reversal for insufficient evidence. An insufficiency error cannot be harmless because it means the State failed to meet its burden of proving

16

the defendant guilty beyond a reasonable doubt. *This is a most basic guarantee of due process in criminal cases.*

"'The *Timley* super-sufficiency condition evolved for a good reason. It evolved because we recognized that we were allowing uncertainty as to how the State persuaded each juror. We were comfortable with this uncertainty—at that particular level of generality in the jury's factfinding—only because we insisted on assurance that each juror's vote was supported by a means for which there was sufficient evidence. . . .'

"*We are now persuaded that the* Timley *alternative means rule is the only choice to ensure a criminal defendant's statutory entitlement to jury unanimity*." (Emphases added.) *Wright*, 290 Kan. at 205-06.

Setting aside its mischaracterization of *Timley*, *Wright* seems to blend K.S.A. 22-3421's discrete concern for general verdict unanimity with the Fourteenth Amendment's Due Process Clause's need for sufficient evidence. But due process does not support automatic reversal either. In *State v. Sieg*, 315 Kan. 526, 530, 509 P.3d 535 (2022), the court said:

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires proof beyond a reasonable doubt of every element of the crime charged. It also requires fact-finders to rationally apply the proof-beyond-a-reasonable-doubt standard to the facts in evidence. So when a criminal defendant challenges the evidence's sufficiency, a reviewing court must examine the evidence in the light most favorable to the prosecution and decide whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' '*All that a defendant is entitled to on a sufficiency challenge is for the court to make a "legal" determination whether the evidence was strong enough to reach a jury at all.*' [Citations omitted.]" (Emphasis added.)

17

See also *Griffin*, 502 U.S. at 60 (holding the Fifth Amendment's Due Process Clause does not require a general guilty verdict in multiple object conspiracy be set aside in a federal prosecution if evidence is inadequate on one object).

This court applies harmless error in other situations that present jury unanimity concerns as well. For example, as the State points out, this court applies harmless error analysis in multiple acts cases. See *De La Torre*, 300 Kan. 591, Syl. ¶ 3 ("In a multiple acts case . . . the appellate court must [] determine whether the error warrants reversal or was harmless. The test for harmlessness when a unanimity instruction was not requested or its absence not objected to is the clearly erroneous standard provided in K.S.A. 2013 Supp. 22-3414[3]."). We even apply a form of harmless error to an arguably more serious situation—the omission of a crime's element from the jury instructions. See *State v. Reyna*, 290 Kan. 666, Syl. ¶ 10, 234 P.3d 761 (2010) ("When a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

Given all this, there simply is no excuse for treating alternative means issues as something exceptional—even under due process. See Mott, 62 U. Kan. L. Rev. at 76 ("[A]t its core, the problem *Wright* wants to solve is more a due process issue than a juror unanimity issue because the issue persists unaltered, even if unanimity were not required by our law. But remember, as a primary justification for the super sufficiency rule, due process is problematic."). Once again, a course correction seems advisable to square how we treat jury instruction problems across their spectrum.

Moving past *Wright*, we asked the parties to consider whether alternative means error implicates the federal Sixth Amendment right to a unanimous verdict. See *Ramos v.*

*Louisiana*, 590 U.S. 83, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020). Reynolds, of course, seized the opportunity to assert the Sixth Amendment mandates unanimity in jury verdicts in cases such as his. The State, just as predictably, contends *Ramos* simply clarified the jury unanimity requirement for a general verdict and did not extend it to a crime's means. We agree with the State.

In *Ramos*, a 10-to-2 jury verdict convicted the defendant of second-degree murder as permitted by state law at the time, resulting in a life sentence without parole. The defendant argued this violated his Sixth Amendment right because two jurors voted not guilty. The United States Supreme Court agreed. It held the Sixth Amendment requires a unanimous verdict to convict a defendant of a serious offense. *Ramos*, 590 U.S. at 87-93.

In holding as it does to require a general unanimous jury verdict to convict a defendant of a serious offense, *Ramos*' spirit aligns with K.S.A. 22-3421's plain text discussed above but *Ramos*' limitations are notable. See *Edwards v. Vannoy*, 593 U.S. 255, 265 n.1, 141 S. Ct. 1547, 209 L. Ed. 2d 651 (2021) ("*Ramos* does not apply to defendants charged with petty offenses, which typically are offenses that carry a maximum prison term of six months or less."). We hold *Ramos* does not support a structural error remedy for an alternative means error in a jury instruction.

We also asked the parties to discuss whether alternative means error violates due process or any other rights under the Kansas Constitution. Reynolds argued Kansas Constitution Bill of Rights sections 5 (trial by jury) and 10 (rights of the accused in prosecution) "guarantee unanimity, which necessarily includes super sufficiency in alternative means cases to be effective." But *State v. Voyles*, 284 Kan. 239, 250, 160 P.3d 794 (2007), rejected that proposition, citing sections 5 and 10, and held: "the right to a unanimous jury verdict in a Kansas court is not a federal constitutional right or a state constitutional right, but rather a state statutory one." And Reynolds concedes Kansas' due

19

process is co-extensive with its federal counterparts, so we need not explore new legal frontiers on that front either. See *State v. Boysaw*, 309 Kan. 526, 537, 439 P.3d 909 (2019); *Griffin*, 502 U.S. at 59 (providing federal due process does not require setting aside a unanimous verdict on multiple-object conspiracy even when insufficient evidence supports one of the objects). The *Boysaw* court advised: "Any future challenge . . . based on state constitutional provisions will need to explain why this court should depart from its long history of coextensive analysis of rights under the two constitutions." 309 Kan. at 538. Reynolds offers no such explanation.

Finally, Reynolds asserts we should continue following *Wright* because it "incentivizes prosecutors to provide clear articulate theories for a jury to consider." That may have a grain of truth, but it ignores the statutorily imposed scheme prompting defendants to object to proposed jury instructions "before the jury retires." K.S.A. 22-3414(3). This "incentivizes" defendants as a matter of law to timely object, so the district court has a chance to correct an error before it occurs, by setting a harder standard of review if they do not. But that statutory encouragement evaporates under *Wright*, because it perversely rewards a defendant's silence with automatic reversal when a proposed jury instruction contains an alternative means problem. We see no reason to skirt the statute.

As for the dissent, it underscores the points made above by not engaging with any depth or precision on the merits. To illustrate, it continues to superficially label *Wilson*, *Timley*, and *Wright* as "precedent" without explaining why that is appropriate when those cases did not involve alternative means error because sufficient evidence supported all proffered means. At best, those cases offer only dicta about an unnecessary remedy, while the cases not discussed by the dissent required a remedy but did not resort to automatic reversal. See *State v. Grissom*, 251 Kan. 851, 893, 840 P.2d 1142 (1992), *State v. Dixon*, 279 Kan. 563, 606, 112 P.3d 883 (2005), and *State v. Cook*, 286 Kan. 1098, 1108, 191 P.3d 294 (2008). Nor does the dissent attempt to reconcile its view with our

multiple acts caselaw, which does not require automatic reversal. See *De La Torre*, 300 Kan. 591. These are not minor analytical omissions.

After careful consideration, we overrule *Wright* and its progeny. There is no justification for requiring automatic reversal and a new trial under circumstances like those presented in Reynolds' case. We are convinced *Wright* was originally erroneous and that more good than harm will come by departing from its singular approach to this type of instructional error. See *Sherman*, 305 Kan. at 108. In its place, we adopt the analysis contemplated by K.S.A. 22-3414(3) when a defendant asserts an alternative means problem with a jury instruction.

*Standard of review*

For clarity, we restate the applicable test in context: If a defendant claims a jury instruction contained an alternative means error, the reviewing court must consider whether the instruction was both legally and factually appropriate. The court will use unlimited review to determine whether the instruction was legally appropriate and will view the evidence in the light most favorable to the requesting party when deciding whether the instruction was factually appropriate. Upon finding error, the court will then determine whether that error was harmless, using the test and degree of certainty set forth in *Plummer*, 295 Kan. 156, and *Ward*, 292 Kan. 541.

*Discussion*

The district court instructed Reynolds' jury that an aggravated burglary conviction would require the State prove as one of the elements: "The defendant entered into or remained in a building or dwelling."

To decide whether this instruction was legally appropriate, we look to K.S.A. 2017 Supp. 21-5807(b) under which the State charged Reynolds, which sets out three locations where an aggravated burglary may occur—a "[d]welling in which there is a human being," a "building . . . which is not a dwelling in which there is a human being," or a "means of conveyance . . . in which there is a human being." K.S.A. 2017 Supp. 21-5807(b). And the instruction listed "building or dwelling" for the location element. This fairly and accurately reflected the applicable statute. We also note the State may charge a defendant with a crime that can be committed in more than one way. See *Rucker*, 309 Kan. at 1094. We hold the instruction was legally appropriate.

Moving to factual appropriateness, the uncontroverted evidence shows Reynolds entered the unoccupied lower-level salon, went upstairs, and broke into the occupied living quarters. The State half-heartedly suggests sufficient evidence established the nondwelling building alternative because Reynolds entered and remained in the lower level with intent to commit a felony. But that ignores a critical component—the statute expressly criminalizes entering into or remaining within "a building . . . *in which there is a human being*." (Emphasis added.) K.S.A. 2017 Supp. 21-5807(b)(2); see also *State v. Daws*, 303 Kan. 303, 794, 368 P.3d 1074 (2016) (holding insufficient evidence supported aggravated burglary conviction when defendant entered an empty dwelling, even though someone arrived later while the defendant remained in the home).

We agree with Reynolds that nothing in the record can sustain an aggravated burglary conviction for entry into a nondwelling building, even viewing the evidence in the light most favorable to the State. No evidence supports that instructed means. We hold listing this alternative means for the location element was factually inappropriate.

Turning to our final step of harmless error, we note Reynolds did not object to the aggravated burglary instruction before the jury retired, so we must look for clear error.

22

See K.S.A. 22-3414(3). And that requires us to be firmly convinced the jury would have reached a different verdict had this error not occurred. See *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

Reynolds contends if we are to apply any harmless error test, we should apply constitutional harmless error under *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). But as we have explained, no constitutional right has been violated; and even if it had, clear error still applies—just as it does for any other unpreserved jury instruction issue under K.S.A. 22-3414(3). See, e.g., *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 (2018) (applying clear error to an unobjected-to instruction that, had the defendant objected, would be governed by constitutional harmless error).

Returning to our test, we have no reluctance concluding Reynolds' jury understood all occupants were upstairs in the living area and found him guilty of aggravated burglary of a dwelling. No evidence detracts from that single scenario, and we can rely on the jury to apply the law to the only available evidence in reaching its verdict. See *State v. Gray*, 311 Kan. 164, Syl. ¶ 2, 459 P.3d 165 (2020) ("Kansas courts presume jury members follow instructions . . . ."). We are not firmly convinced the outcome would have been different without listing building as a possible location element. The aggravated burglary instruction was not clearly erroneous.

AGGRAVATED BURGLARY:  ALTERNATIVE MEANS
(THREE ITEMIZED FELONIES)

The district court instructed the jury that the State had to prove Reynolds entered into or remained in a building or dwelling "with the intent to commit *kidnapping, aggravated assault or criminal threat therein*." (Emphasis added.) In the Court of Appeals, Reynolds argued the individually listed felonies described in the aggravated

23

burglary instruction created alternative means for intent—one for each felony. The panel bypassed that argument by just assuming they were alternative means and held sufficient evidence supported each. The State challenges this assumption, arguing the three felonies were options within a means as defined by our caselaw. We consider next how our post-*Wright* approach with alternative means instructions impacts the related matter of options within a means.

*The consequences for options within a means*

Two years after *Wright*, the court in *Brown* distinguished "alternative means" from "options within a means" for the first time. *Brown*, 295 Kan. at 188-200. There, the defendant claimed jury instructions separating the charged offenses' elements with "or" stated alternative means of committing the charged crimes. But the State argued this statutory language should be treated as an "atypical alternative means case," no doubt hoping to avoid *Wright*'s rigid outcome. 295 Kan. at 189.

Rejecting the invitation to change course by overturning *Wright*, the *Brown* court embraced a "no error" concept of "options within a means" borrowed from the Washington Supreme Court. 295 Kan. at 196 (citing *In re Jeffries*, 110 Wash. 2d 326, 339-40, 752 P.2d 1338 [1988]). The *Brown* court held:

> "The listing of alternative material elements, when the list is incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. *But merely describing a material element or a factual circumstance that would prove the crime does not create alternative means, even if the description is included in a jury instruction*." (Emphasis added.) 295 Kan. at 181, Syl. ¶ 7.

For "options within a means," the *Brown* court held *Wright*'s super sufficiency was not required. It noted a court must discern legislative intent to determine "if an 'or'

24

separates an option" that is or is not an alternative means. 295 Kan. at 193; see also 295 Kan. at 194 ("In examining legislative intent, a court must determine for each statute what the legislature's use of a disjunctive 'or' is intended to accomplish. Is it to list alternative distinct, material elements of a crime . . . ? Or is it to merely describe a material element or a factual circumstance that would prove the crime?").

Under *Brown*, the key difference between alternative means and options within a means is in their proof requirements. With alternative means, super sufficiency demands the evidence establish each means presented to the jury to avoid reversal. With options within a means, one option's lack of evidence does not automatically compel reversal. See *Brown*, 295 Kan. at 198 ("Jury unanimity on options within a means—secondary matters—is generally unnecessary; therefore, on appeal, a super-sufficiency issue will not arise regarding whether there is sufficient evidence to support all options within a means.").

At the outset, one might ponder the obvious question: How is it that our courts would treat the conjunction "or" differently in terms of evidentiary proof in one circumstance and not the other? See, e.g., *Daws*, 303 Kan. at 789 (aggravated burglary case; "entering into or remaining within" is viewed as alternative means); *State v. Castleberry*, 301 Kan. 170, 185, 339 P.3d 795 (2014) (fleeing a police officer under K.S.A. 2009 Supp. 8-1568[b][1][C], [E]; "engaging in reckless driving or committing five or more moving violations are 'options within means'"). This seems to invite the same sort of speculation that *Wright* abhors. See *State v. Jordan*, 317 Kan. 628, 636, 537 P.3d 443 (2023) (suggesting a court speculates when addressing alternative means or options within a means cases by stating: "a reviewing court looks to the relevant statute's language and structure to *decide whether the Legislature meant* to list distinct alternatives for an element of the crime" [emphasis added]); see also *Moler*, 316 Kan. at 571 ("[W]hen a statute is plain and unambiguous, the appellate courts will not speculate as to

25

the legislative intent behind it."). The irony, of course, is that the Legislature did not explicitly create options within a means as an analytical steppingstone—it is a judicially crafted concept that simply limits *Wright*'s fallout.

That question aside, since we have decided alternative means no longer requires super sufficiency to avoid reversal, we hold there is no corresponding need to continue distinguishing options within a means in a search for instructional error. In either instance, the same test applies.

*Discussion*

To address Reynolds' claim, we must first decide whether the instruction was legally appropriate. K.S.A. 2017 Supp. 21-5807(b) criminalizes entering into or remaining within an enclosed space "with intent to commit a felony . . . therein." It does not identify particular felonies triggering the crime, even though the district court listed three in its instruction: kidnapping, aggravated assault, or criminal threat. Even so, all three listed crimes are felonies, and the record shows the kidnapping instructions fairly and accurately reflected the criminal elements of each. See K.S.A. 2017 Supp. 21-5408(a)(3) (kidnapping is a severity level three, person felony); K.S.A. 2017 Supp. 21-5412(b)(a) (aggravated assault is a severity level seven, person felony); K.S.A. 2017 Supp. 21-5415(a)(1) (criminal threat is a severity level nine, person felony). We hold the aggravated burglary instruction was legally appropriate.

Moving to factual appropriateness, Reynolds argues insufficient evidence supported the kidnapping and criminal threat felonies. He did not seek review of the panel's holding that "ample evidence" supported his intent to commit an aggravated assault, so we need not consider that one. See *Reynolds*, 2022 WL 2188164, at *8.

26

As to kidnapping, Reynolds points out the jury found him not guilty of the separate kidnapping charge, along with its lesser included offenses, so he concludes no evidence existed to justify including the kidnapping means with the aggravated burglary instruction. In rejecting that assertion, the panel observed, "This court is merely charged with determining if sufficient evidence exists such that a rational fact-finder *could have* found Reynolds guilty of intent to kidnap . . . [,] not whether he was in fact found guilty beyond a reasonable doubt." *Reynolds*, 2022 WL 2188164, at *8. We agree with the panel and note an appellate court examines factual appropriateness by viewing the evidence in the light most favorable to the requesting party.

For the criminal threat listing, Reynolds claims error because the panel reversed his criminal threat conviction and argues the jury may have convicted him of aggravated burglary based on the unconstitutional reckless disregard mens rea. See *Reynolds*, 2022 WL 2188164, at *1 (reversing the criminal threat conviction under *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 [2019] [holding the reckless disregard portion of the criminal threat statute unconstitutionally overbroad]). The panel did not directly address his concern. Instead, it looked to whether sufficient evidence proved Reynolds intended to commit criminal threat and held the record did so. *Reynolds*, 2022 WL 2188164, at *7-8.

Reynolds does not challenge that holding, he simply repeats his argument that the aggravated burglary conviction must be reversed because the jury may have relied on reckless criminal threat to find him guilty. He cites *Leary v. United States*, 395 U.S. 6, 31-32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969), as support, noting the Supreme Court wrote that "[i]t [h]as long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." But Reynolds' argument fails because the instructions did not give the jury the option to rely on reckless criminal threat as the underlying felony.

27

The instructions explained the State had to show Reynolds intended to commit one of three underlying felonies. The jury could not have concluded Reynolds intended to commit criminal threat recklessly because "a person cannot act both intentionally and recklessly with respect to the same act. Rather, an act is either intended or not intended; it cannot simultaneously be both. [Citation omitted.]" *State v. O'Rear*, 293 Kan. 892, 903, 270 P.3d 1127 (2012); see *Griffin*, 502 U.S. at 59 ("[J]urors *are* well equipped to analyze the evidence.").

The panel appears to have acknowledged this. It stated:  "[W]hile this court reverses Reynolds' criminal threat conviction for the reasons explained above, there is nevertheless sufficient evidence to support that Reynolds likewise *had the intent to commit intentional criminal threat when he entered into and remained within the house*." (Emphasis added.) *Reynolds*, 2022 WL 2188164, at *8. Reynolds does not discuss this in his petition for review, and "[w]hen a party presents . . . no argument to support its request for relief, an issue may be deemed abandoned." See *State v. Evans*, 313 Kan. 972, 993, 492 P.3d 418 (2021). Even so, the jury instruction required the State prove Reynolds "threatened to commit violence and communicated the threat with the intent to place another in fear," and the record shows he told the victims he was "going to kill everyone." This strongly supports aggravated burglary's "intent to commit criminal threat" element.

We hold the aggravated burglary instruction, listing three felonies for the alternative means to commit aggravated burglary, was legally and factually appropriate. There was no error in giving that instruction.

THE AGGRAVATED BURGLARY CHARGING DOCUMENT

Generally, when a jury instruction describing the crime's elements adds statutory elements not in the charging document, that instruction is overly broad and erroneous.

28

*State v. Phillips*, 312 Kan. 643, 668, 479 P.3d 176 (2021); see also *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013). This is because a charging document specifically sets out an alleged offense, so a defendant knows the nature of the accusation. This principle serves two purposes: enabling the defendant to develop a defense and limiting convictions to facts advanced in the accusation. *Phillips*, 312 Kan. at 668. For these reasons, the State is bound by its charging document.

Reynolds claims the aggravated burglary instruction was too broad because it included the dwelling element, which the original grand jury indictment did not expressly identify. It charged him with entering into or remaining within "a building, motor vehicle, or other means of conveyance," while the jury instruction listed "a building or dwelling" for the location element. The panel avoided the merits and simply decided any error was harmless using a clear error standard. It explained:

> "Assuming, without deciding, that the aggravated burglary instruction was in fact overbroad such as to constitute an error—Reynolds cannot show that the error was clearly erroneous. This court is not firmly convinced that the jury would have reached a different verdict had the jury instruction only included the word building and not the word dwelling. There is no evidence that Reynolds suffered a "'trial by ambush'" based on the inclusion of a description for the burgled structure in the jury instruction. Accordingly, this court finds that even if the instruction were overbroad, it would not require reversal under the clear error standard. [Citations omitted.]" *Reynolds*, 2022 WL 2188164, at *11.

*Additional facts*

The grand jury issued an indictment alleging aggravated burglary:

> "COUNT 4

29

"AGGRAVATED BURGLARY

"K.S.A. 21-5807(b)

"Level 4, Person Felony

"On or about the 4th day of November, 2017 in the State of Kansas and County of Shawnee, RYAN DAVID REYNOLDS, did, then and there, unlawfully, feloniously, and without authority, enter into or remain within *a building, motor vehicle, or other means of conveyance*, to-wit: 2225 NE 39th St., in which there is a human being, to-wit: Kayla Reynolds and/or Lynzie Reynolds and/or E.R.R. xx/xx/15, with the intent to commit a felony therein, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas." (Emphasis added.)

As readily seen, despite K.S.A. 2017 Supp. 21-5807(b) identifying a dwelling as an enclosed space, the indictment did not explicitly mention it. But the aggravated burglary instruction did, stating in pertinent part: "The defendant entered into or remained in a building or dwelling." This same language appeared in Reynolds' own proposed instruction, which he submitted well before trial.

*Discussion*

On review, the State reframes the issue as a charging document question because the indictment's introductory language plainly alleging a level four, person felony can only apply to a dwelling under K.S.A. 2017 Supp. 21-5807(b). The State's point is well taken. The indictment specifying a level four, person felony, certainly weakens Reynolds' prejudice claim—especially when he proposed a similar instruction and had ample time to discover the mismatched elements. See *State v. Dunn*, 304 Kan. 773, 821, 375 P.3d 332 (2016) (holding the charging document error did not affect the defendant's

30

substantial rights because the defendant and his trial counsel understood exactly what the State sought to prove on the charged crime).

This may explain why Reynolds makes little effort to show prejudice or even explain why the jury would have reached a different conclusion with an instruction more like the charging document. Instead, he just repeats his assertion the evidence does not support he entered a "building in which there was a human," which we already discussed.

In *Brown*, the court explained:

"For attempted aggravated robbery, the State charged Brown with committing 'any overt act, to-wit: demanded drugs and cash, toward the perpetration of a crime, to-wit: Aggravated Robbery.' The district court omitted 'to wit: demanded drugs and cash' from the related jury instruction. Brown argues this instruction erroneously broadened the crime charged to include any overt act.

"Generally, '[a] jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous.' Such error is excusable when the defendant's substantial rights are not prejudiced. However, Brown does not explain how—and the record does not suggest that—the discrepancy between the information and the instruction deprived him of due process or impacted his substantial rights. For example, Brown does not argue he was unfairly surprised at trial when the State presented the theory that he served as wheelman instead of demanding drugs and cash. Furthermore, the instruction accurately stated the law as applied to the facts in this case. Therefore, we are not persuaded that this discrepancy—if error—amounts to reversible error. [Citations omitted.]" *Brown*, 306 Kan. at 1165.

Because the instruction did not define a "building"—and Reynolds does not argue the instruction was faulty for neglecting to provide that definition—he fails to firmly convince us the jury would have reached a different result. And as the panel pointed out,

31

Reynolds could not have been surprised or "ambushed" by an instruction he proposed. See *State v. Hart*, 297 Kan. at 510.

AGGRAVATED ENDANGERING A CHILD: JURY INSTRUCTION

The State charged Reynolds with aggravated endangering a child under K.S.A. 2017 Supp. 21-5601(b)(1), which criminalizes "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." Reynolds argues "causing or permitting" creates two alternative means of committing the crime and insufficient evidence supports that he permitted the child to be in danger. The panel concluded these were not alternative means and even if they were, sufficient evidence supported both. *Reynolds*, 2022 WL 2188164, at *9-10. We agree there was no error.

*Additional facts*

At the instructions conference, Reynolds argued no evidence showed he *permitted* the child to be placed in danger, so the instruction should have been limited to whether he *caused* the child to be placed in danger. The district court agreed, but when it orally instructed the jury on the charge, it said the State needed to prove "[t]he defendant recklessly *caused or permitted* [the child] to be placed in a situation in which [the child]'s life, body, or health was endangered." (Emphasis added.) Reynolds did not object. Later, during the State's closing arguments, the court noted its mistake and told the prosecutor: "[W]hen you get to [the aggravated child endangerment] instruction . . . , there was an error in that one. I have a copy with the error in question."

When the prosecutor read the instruction for aggravated child endangerment, she omitted the "permitted" language: "Instruction Number 20 is Count 9, Aggravated

32

Endangering a Child. And these elements that the State has to prove is that the defendant recklessly caused [the child] to be placed in a situation in which [the child]'s life, body, or health was in danger." The written instruction provided to the jury included only the "causing" language, telling it that the State had to prove "[t]he defendant recklessly caused [the child] to be placed in a situation in which [the child]'s life, body or health was endangered."

*Discussion*

Considering the district court acknowledged its misstatement, the prosecutor read the instruction without "permitted," and the written instruction omitted "permitted," it seems clear the jury had only one alleged means before it. Indeed, Reynolds' attempt to exploit what amounts to a slip of the tongue as an alternative means structural error underscores the potential harm in preserving *Wright*. Even so, our caselaw suggests we should continue the analysis. See *Miller v. State*, 298 Kan. 921, 933, 318 P.3d 155 (2014) ("[A] correct written instruction does not overcome defects in a trial court's oral instructions because orally instructing the jury on applicable law is one of a trial court's fundamental duties."). The issue is whether the district court's oral instruction was legally and factually appropriate.

We hold the instruction was legally appropriate because the challenged phrase "caused or permitted" fairly and accurately reflected the applicable statutory language, "causing or permitting." See K.S.A. 2017 Supp. 21-5601(b)(1). And we hold it was factually appropriate because, viewed in the light most favorable to the State, Reynolds both caused and permitted his daughter to be placed in danger when he entered the dwelling without authority, confined his daughter in the room, waved his gun around, and declared he would kill everyone. See Black's Law Dictionary 275, 1376 (11th ed. 2019)

33

(defining "cause" as "[t]o bring about or effect" and "permit" as "to allow [something] to happen").

Reynolds argues he did not "permit" the child to be placed in danger. He relies on *State v. Wilson*, 267 Kan. 550, 987 P.2d 1060 (1999), in which the court defined "permit" in this context as having "authority or control over either the child or the abuser and permit[ting] a child under the age of 18 years to be placed in such a situation where the child's life, body, or health may be injured or endangered." 267 Kan. at 568. But the *Wilson* court defined "cause," as not requiring authority or control if the defendant participated in "actively creating the injurious circumstances." 267 Kan. at 562.

To be sure, there is room to question *Wilson*'s interpretation, but even its view supports a conclusion that Reynolds permitted the incident. He created this dangerous situation for his daughter and could have stopped himself. He controlled his own conduct, causing the circumstances, and allowed them to continue.

We hold the district court's oral instruction was legally and factually appropriate. No error occurred.

CUMULATIVE ERROR

We have determined the factually inappropriate jury instruction setting out the aggravated burglary charge's location element as both a building and dwelling was not clearly erroneous. We also concluded the overly broad, aggravated burglary instruction was not clearly erroneous. In *State v. Waldschmidt*, 318 Kan. 633, 662, 546 P.3d 716 (2024), we held an unpreserved instructional issue that is not clearly erroneous may not be aggregated in a cumulative error analysis under K.S.A. 22-3414(3). There is no error to accumulate here.

Judgment of the Court of Appeals affirming the district court is affirmed on the issues subject to review. Judgment of the district court is affirmed on the issues subject to review.

* * *

ROSEN, J., concurring in part and dissenting in part: I join most of the majority's opinion. But I dissent from its decision to depart from our precedent in *State v. Wilson*, 220 Kan. 341, 552 P.2d 931 (1976), *State v. Timley*, 255 Kan. 286, 875 P.2d 242 (1994), and *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010). I would continue to reverse an alternative means conviction when at least one of the means submitted to the jury lacked sufficient supporting evidence and the jury did not indicate it unanimously relied on a sufficiently supported theory of guilt.

Some crimes may be committed in more than one way. We call these "alternative means" crimes. *State v. Rucker*, 309 Kan. 1090, 1094, 441 P.3d 1053 (2019). Courts may permit juries to consider every means of a charged crime that was included in the charging document when the jury considers a defendant's guilt. In 1976, we held that individual jurors do not need to unanimously agree on which of those alternative means the State proved in finding a defendant guilty. But we also held that, in the absence of such unanimity, sufficient evidence must support every means. *Wilson*, 220 Kan. at 345. Although we strayed from this "super-sufficiency" requirement in a few cases, we confirmed it in 1994 and again in 2010. See *Timley*, 255 Kan. 289; *Wright*, 290 Kan. at 205.

In *Wright*, we expanded on the reasoning behind the super-sufficiency requirement. We explained that it exists to ensure that "each juror's vote was supported

35

by a means for which there was sufficient evidence," or, in other words, that a jury unanimously rested its verdict on a legally cognizable theory of guilt—even if it was not unanimous on which theory. 290 Kan. at 205 (quoting Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275, 299 [2005]). This is because, when the State inexplicably charges a means for which there is insufficient or no supporting evidence and then successfully advocates for an instruction on that means, some jurors may arrive at a guilty verdict by finding the State proved that insufficiently supported means. Cf. *State v. Daniels*, 278 Kan. 53, 72, 91 P.3d 1147 (2004) (duplicitous charging—including two separate offenses in single count— "confuses the defendant as to how he or she must prepare a defense, and it confuses the jury"). Those jury votes cannot stand. What remains is, at best, a non-unanimous finding of guilt or, at worst, no finding of guilt. See *State v. Green*, 94 Wash. 2d 216, 232, 616 P.2d 628 (1980) (when there is sufficient evidence to support only one of two alternative means, only the sufficiently supported means is "left" to support the conviction and it is impossible "to know whether the jury deemed that [means] established in the absence of some indication of jury unanimity"). Because of this possibility, the difficulty guessing what a jury might have done, and the defendant's right to a unanimous general verdict, we've held the State accountable for its slipshod approach to prosecution and reversed a conviction when there was insufficient evidence to support at least one means offered to the jury and there was no indication from the jury that it unanimously relied on a sufficiently supported means.

Today, the majority rejects this line of precedent without addressing its underlying reasoning. It observes that K.S.A. 22-3421 and the Sixth Amendment require only a general unanimous guilty verdict and thus do not require that sufficient evidence support every means submitted to a jury. The majority concludes an alternative means error should therefore be reviewed under our instructional error paradigm, a shift that

36

essentially paves the way for the State to charge and instruct on crimes for which there is no evidence.

I agree, as does our precedent, that neither K.S.A. 22-3421 nor the Sixth Amendment *require* super-sufficiency. The majority contends the Constitution requires only a unanimous general verdict as to guilt. But what the majority ignores is the possibility of a non-unanimous general verdict as to guilt when the jurors do not indicate they were unanimous as to means and at least one of the means was not supported by sufficient evidence. As I discussed, in that situation, some jurors' guilty votes may have rested on a means for which there was insufficient evidence, and those votes *cannot stand*. We are then left with less than a unanimous jury rendering a guilty verdict. This surely violates any "general verdict" requirement. 319 Kan. at ___, slip op. at 13.

I find nothing in the State's briefing or the majority's opinion that convinces me we do not face a jury unanimity concern under these circumstances. In the early portions of the majority's opinion, it seems to acknowledge the concern is there. But it quickly swats it away by rhetorically asking "why can't we employ harmless error to conclude the jury unanimously convicted [the defendant] on the only means for which there was [sufficient evidence]?" 319 Kan. at ___, slip op. at 9.

To this, I answer that the State has failed to meet its burden to show that we should depart from our precedent treating the potential deprivation of general jury unanimity as a structural error. Neither the State nor the majority offers any discussion of the nature of structural error or why this is not one. Cf. *State v. Ramos*, 367 Or. 292, 299-319, 478 P.3d 515 (2020) (providing lengthy analysis of whether jury unanimity error under Sixth Amendment is structural error or amenable to harmless error review). At the very least, because this error implicates Sixth Amendment rights, the majority should review for no less than constitutional harmless error. See *United States v. Litwin*, 972 F.3d 1155, 1178

37

(9th Cir. 2020) (holding that if jury unanimity error under the Sixth Amendment is subject to harmlessness review, constitutional harmless error standard applies); *Ramos*, 367 Or. at 319-20 (holding that instruction errors implicating Sixth Amendment right to jury unanimity are subject to constitutional harmless error standard).

The United States Supreme Court has offered no ruling on whether the Sixth Amendment requires jury members to unanimously rest their guilty verdicts on a legally cognizable theory of guilt and whether errors casting doubt on that unanimity are subject to automatic reversal. In the absence of such a ruling, the State holds the burden to convince this court our decisions imposing such a requirement were error. Because I believe the State has failed to carry that burden, I would reverse Reynolds' conviction for aggravated burglary.

LUCKERT, C.J., joins the foregoing concurring and dissenting opinion.